NUMBER 13-08-00100-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JAIRO A. PUENTES, M.D., Appellant,


v.



SPOHN HEALTH NETWORK

AND CHRISTUS SPOHN HEALTH

SYSTEM CORPORATION D/B/A

CHRISTUS SPOHN HOSPITAL, Appellees.

 


On appeal from the 319th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Garza



 Appellant, Jairo A. Puentes, M.D., challenges the trial court's summary judgment
in favor of appellees, Spohn Health Network and Christus Spohn Health System
Corporation d/b/a Christus Spohn Hospital. (1) Dr. Puentes sued Spohn alleging, among
other things, violations of the Texas Free Enterprise and Antitrust Act (the "TFEAA"). See
Tex. Bus. & Com. Code Ann. §§ 15.01-.52 (Vernon 2002). By two issues, Dr. Puentes
contends that the trial court erred in granting summary judgment to Spohn because: (1)
Dr. Puentes was not required to produce evidence of dominant market share because
Spohn's actions constituted a per se antitrust violation; and (2) the trial court misidentified
the "relevant market" in determining whether Spohn had acted in an anticompetitive
manner. We affirm.

I. Background

 The Network, a wholly-owned subsidiary of the System, provides managed
healthcare services for various employers in a twelve-county area around Corpus Christi,
Texas. Dr. Puentes is a pain management physician practicing in Corpus Christi; he also
provides radiological imaging services to patients through an entity known as Medical
Specialist Group, P.A. d/b/a Saratoga Medical Center ("Saratoga"). Dr. Puentes is a
member of the Network; accordingly, if another doctor in the Network refers a patient to Dr.
Puentes for pain management treatment, the Network allows reimbursement for that
treatment. However, if a doctor refers a patient to Saratoga for radiological services, the
Network will not reimburse for those services.

 On February 7, 2002, Dr. Puentes filed an application with the Network to allow
Saratoga to join the Network as an ancillary provider of radiological services. According
to Dr. Puentes, ancillary provider status would allow Saratoga to obtain reimbursement
from the Network for radiology referrals from other Network doctors. On March 1, 2002,
the Network denied Saratoga's application, ostensibly because Dr. Puentes himself is not
credentialed as a radiologist.

 Dr. Puentes filed suit against Spohn on November 22, 2002, asserting multiple
causes of action including negligence, breach of contract, tortious interference with
prospective business relations, and violations of the TFEAA. (2) See id. The basis of Dr.
Puentes's claims under the TFEAA was that Spohn had acted in an anticompetitive
manner by refusing to allow Saratoga to receive reimbursement from Network referrals. 
According to Dr. Puentes, the actual reason that Saratoga's application was denied was
because Saratoga charges less for radiological services than do the System-owned
hospitals, which are eligible for reimbursement. Dr. Puentes claimed that, by refusing to
allow Saratoga to be reimbursed, Spohn was impermissibly "protecting [its] hospital[s] from
competition." (3) Spohn notes that Dr. Puentes further alleged in his second amended
original petition, filed on July 8, 2005, that Spohn "conspired with others who provide
radiology testing facilities to keep prices in the Corpus market artificially high, which
benefits the hospital defendant." (4)

 Spohn filed a motion for partial (5) traditional summary judgment on February 19,
2007, asserting in part that: (1) the Network does not possess sufficient market power in
the relevant market to be liable under the TFEAA; (2) even if the Network did possess
sufficient market power in the relevant market, Dr. Puentes cannot show that it willfully
acquired or maintained such power; and (3) Dr. Puentes did not identify any entity with
whom the Network "conspired" to restrain trade. Spohn also filed a motion for no-evidence
summary judgment as to all of Dr. Puentes's causes of action on May 9, 2007, contending
in pertinent part that Dr. Puentes produced no evidence showing: (1) that the alleged
restraint of trade is unreasonable or has an adverse affect on competition in the relevant
market; (2) that the Network has a sufficient market share to exert an anticompetitive effect
on the market; (3) that Dr. Puentes has standing to assert an antitrust injury; (4) that Spohn
constitutes a monopoly; (5) that Spohn attempted to monopolize; (6) that Spohn engaged
in price fixing; or (7) that Spohn conspired, combined, or contracted in restraint of trade.

 Accompanying Spohn's motions was an affidavit executed by Robert David Frum,
a regional vice president for the System and acting Executive Director of the Network. 
Frum stated in the affidavit that the "relevant market" in which the Network competes is the
twelve-county area around Corpus Christi, and that this area has over a dozen other
managed healthcare providers serving employers. Frum further stated that, according to
his data, the Network's share of the relevant market, taking into account all competing
managed healthcare providers, was 14.67% in 2002 and decreased to 7.18% in 2006. In
his responses, Dr. Puentes attached deposition testimony by Frum stating that the System,
which owns and operates several hospitals throughout the area, "retains about 65 percent
market share of inpatient discharges."

 The trial court granted both motions for summary judgment on June 7, 2007. This
appeal followed. (6)

II. Standard of Review

 We review a trial court's grant of a traditional motion for summary judgment under
a de novo standard of review. Creditwatch, Inc. v. Jackson, 157 S.W.3d 814, 816 n.7 (Tex.
2005) (citing Schneider Nat'l Carriers, Inc. v. Bates, 147 S.W.3d 264, 290 n.137 (Tex.
2004)); Alaniz v. Hoyt, 105 S.W.3d 330, 345 (Tex. App.-Corpus Christi 2003, no pet.). To
obtain relief via a traditional motion for summary judgment, the movant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); Mowbray
v. Avery, 76 S.W.3d 663, 690 (Tex. App.-Corpus Christi 2002, pet. denied). If the movant
produces evidence sufficient to show it is entitled to summary judgment, the non-movant
must then present evidence raising a fact issue. See Walker v. Harris, 924 S.W.2d 375,
377 (Tex. 1996). In deciding whether there is a disputed fact issue that precludes
summary judgment, evidence favorable to the non-movant will be taken as true. Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop. Mgmt.
Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). Evidence favorable to the movant, however,
will not be considered unless it is uncontroverted. Great Am. Reserve Ins. Co. v. San
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). Moreover, every
reasonable inference will be indulged in favor of the non-movant and any doubts resolved
in its favor. Grinnell, 951 S.W.2d at 425 (citing Nixon, 690 S.W.2d at 549).

 For a no-evidence summary judgment motion to be successful, the party seeking
the judgment must assert that no evidence exists as to one or more of the essential
elements of the non-movant's claims which the non-movant would have the burden to
prove at trial. See Tex. R. Civ. P. 166a(i); Holstrom v. Lee, 26 S.W.3d 526, 530 (Tex.
App.-Austin 2000, no pet.). When responding to a no-evidence motion, the non-movant
is required to present more than a scintilla of probative evidence raising a genuine issue
of material fact as to one or more of the challenged elements. See AMS Constr. Co., Inc.
v. Warm Springs Rehab. Found., Inc., 94 S.W.3d 152, 159 (Tex. App.-Corpus Christi
2002, no pet.); Oasis Oil Corp. v. Koch Ref. Co., 60 S.W.3d 248, 252 (Tex. App.-Corpus
Christi 2001, pet. denied).

 If the trial court's order granting summary judgment does not specify the ground or
grounds relied upon for the ruling, as is the case here, we will affirm the judgment on
appeal if any of the theories advanced by the movant are meritorious. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001) (quoting Carr v. Brasher, 776 S.W.2d 567, 569
(Tex. 1989)).

III. Applicable Law

 The TFEAA provides in relevant part that "[e]very contract, combination, or
conspiracy in restraint of trade or commerce is unlawful," and that "[i]t is unlawful for any
person to monopolize, attempt to monopolize, or conspire to monopolize any part of trade
or commerce." Tex. Bus. & Com. Code Ann. § 15.05(a), (b). We construe these provisions
in accordance with federal antitrust caselaw. Id. § 15.04; Coca-Cola Co. v. Harmar Bottling
Co., 218 S.W.3d 671, 688 (Tex. 2006); see Star Tobacco, Inc. v. Darilek, 298 F. Supp. 2d
436, 440-41 (E.D. Tex. 2003) (noting that sections 15.05(a) and (b) of the TFEAA are
analogous to sections 1 and 2 of the federal Sherman Act).

 To establish that Spohn contracted, combined, or conspired in restraint of trade in
violation of section 15.05(a), Dr. Puentes must show that the alleged contract, combination,
or conspiracy is unreasonable and has an "adverse effect on competition in the relevant
market." See Winston v. Am. Med. Int'l, 930 S.W.2d 945, 951-52 (Tex. App.-Houston [1st
Dist.] 1996, no pet.) (quoting DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 688 (Tex.
1990)). To establish that Spohn monopolized in violation of section 15.05(b), Dr. Puentes
must show: (1) Spohn's possession of monopoly power in the relevant market; and (2)
Spohn's willful acquisition or maintenance of that power, as distinguished from growth or
development as a consequence of a superior product, business acumen, or historical
accident. See Caller-Times Publ'g Co. v. Triad Commc'ns, Inc., 826 S.W.2d 576, 580
(Tex. 1992) (citing United States v. I.T.T. Grinnell Corp., 384 U.S. 563, 570-71 (1966)). To
establish attempted monopolization, Dr. Puentes must show: "(1) that the defendant has
engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize
and (3) a dangerous probability of achieving monopoly power." Spectrum Sports, Inc., v.
McQuillan, 506 U.S. 447, 456 (1993); Star Tobacco, Inc., 298 F. Supp. 2d at 447. (7)

 It is well-established that the TFEAA and the Sherman Act do not prohibit all
restraints of trade; rather, they prohibit only those that restrain trade unreasonably. See,
e.g., Standard Oil Co. of N.J. v. United States, 221 U.S. 1, 60 (1911); DeSantis, 793
S.W.2d at 687. Under this rule--the so-called "rule of reason"--the fact-finder weighs all
of the circumstances of a case in deciding whether a restrictive practice should be
prohibited as imposing an unreasonable restraint on competition. Cont'l T.V., Inc. v. GTE
Sylvania, Inc., 433 U.S. 36, 50 (1977).

 However, "there are certain agreements or practices which because of their
pernicious effect on competition and lack of any redeeming virtue are conclusively
presumed to be unreasonable." Id. (citing N. Pac. Ry. Co. v. United States, 356 U.S. 1,
5 (1958)). Such "per se" antitrust violations fall outside the rule of reason analysis and are
"illegal without elaborate inquiry as to the precise harm they have caused or the business
excuse for their use." Id. Examples of such actions include price fixing, division of
markets, group boycotts, and tying arrangements. Affiliated Capital Corp. v. City of
Houston, 700 F.2d 226, 236 n.13 (5th Cir. 1983) (citing N. Pac. Ry. Co., 356 U.S. at 5). 
If a plaintiff shows that a challenged practice is of a type that has been historically
classified as illegal per se, there is no need for the plaintiff to prove the precise harm to
competition that the practice may have caused. See Arizona v. Maricopa County Med.
Soc'y, 457 U.S. 332, 343-45 (1982); N. Pac. Ry. Co., 356 U.S. at 5.

 Still, per se liability is reserved for actions that are "so plainly anticompetitive that no
elaborate study of the industry is needed to establish their illegality." Texaco Inc. v.
Dagher, 547 U.S. 1, 5 (2006) (citing Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S.
679, 692 (1978)). Accordingly, courts are reluctant to adopt per se rules "where the
economic impact of certain practices is not immediately obvious." Texaco Inc., 547 U.S.
at 5 (citing State Oil Co. v. Khan, 522 U.S. 3, 10 (1997)).

IV. Analysis

 We note at the outset of our analysis that Dr. Puentes cannot sustain an action
under subsection 15.05(a) of the TFEAA, regarding conspiracies or combinations in
restraint of trade, because he has not provided any evidence that Spohn--either the
Network or the System--engaged in any concerted action with any other independent
entity. See Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 761-762 (1984)
(noting that, in order to recover under subsection 15.05(a), a plaintiff must assert concerted
action between two or more entities). Further, a violation of subsection 15.05(a) cannot
be based on concerted action between a corporation and its wholly-owned subsidiary, such
as the two appellees in the instant case. See Copperweld Corp., 467 U.S. at 761-62; Red
Wing Shoe Co. v. Shearer's, Inc., 769 S.W.2d 339, 345 (Tex. App.-Houston [1st Dist.]
1989, no writ). Dr. Puentes also refers obliquely in his appellate brief to alleged price fixing
by the Network, which would constitute a per se antitrust violation. See Affiliated Capital
Corp., 700 F.2d at 236 n.13. However, price fixing rises to the level of per se illegality only
when it involves a pricing agreement between two or more competing entities in the same
market. See Texaco Inc., 547 U.S. at 5-6 (noting that "price setting by a single
entity--albeit within the context of a joint venture--and not a pricing agreement between
competing entities with respect to their competing products" was not "price fixing in the
antitrust sense"). Because Dr. Puentes has provided no evidence that Spohn entered into
a pricing agreement with any other entity, price fixing may not serve as a basis for his
claims under subsection 15.05(a).

 We instead focus our attention in this analysis on Dr. Puentes's claims under
subsection 15.05(b), regarding monopolization and attempted monopolization. The crux
of Spohn's motions for summary judgment with respect to subsection 15.05(b) is that Dr.
Puentes failed to produce any competent evidence showing that the Network possessed
monopoly power in the relevant market. See Caller-Times Publ'g Co., 826 S.W.2d at 580. 
In his response to the motions for summary judgment and by his first issue on appeal, Dr.
Puentes claims that the instant case "involves a clear situation where market prices are
higher because of [the Network]'s actions" and therefore that "the need to analyze market
share to determine the effect on the market does not exist." More specifically, Dr. Puentes
alleges that he "has shown that the reason [he] was denied referrals is because of lower
charges," and that this fact in and of itself constitutes harm to the relevant market. 
Therefore, according to Dr. Puentes, Spohn's actions are per se illegal and so he was not
required to present evidence regarding Spohn's market power. See Maricopa County Med.
Soc'y, 457 U.S. at 343-45; N. Pac. Ry. Co., 356 U.S. at 5.

 We disagree that Spohn's alleged anticompetitive actions are illegal per se. Dr.
Puentes has not pointed to any authority, nor can we find any, indicating that an action
producing higher prices in a relevant market constitutes, by itself, a per se illegal activity,
and we decline to create such a rule in this context. A per se rule is appropriate only after
courts have had considerable experience with the type of restraint at issue, and only if
courts can predict with confidence that it would be invalidated in all or almost all instances
under the rule of reason. Leegin Creative Leather Prods. v. PSKS, Inc., 551 U.S. 877, 127
S. Ct. 2705, 2713 (2007); see Maricopa County Med. Soc'y, 457 U.S. at 344. Dr. Puentes
has given us no reason to be confident that the rule of reason would invalidate Spohn's
practice of allowing only credentialed radiologists--who happen to charge more for their
services than do those without such credentials--to receive reimbursements for radiology
referrals within its network. Further, we cannot say that the economic impact of Spohn's
practices is "immediately obvious." See Texaco Inc., 547 U.S. at 5. Accordingly, a per se
rule would be inappropriate here.

 Because Spohn's alleged anticompetitive actions are not per se illegal, they must
be analyzed under the rule of reason. Dr. Puentes bears the burden under that rule of
showing that Spohn's actions had an adverse effect on competition in the relevant market. 
DeSantis, 793 S.W.2d at 688; see Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S.
2, 29 (1984). Additionally, in monopoly cases, "[e]vidence of a defendant's market share
is the principal tool used by courts to determine the existence of monopoly power." Dimmitt
Agri Indus., Inc. v. CPC Int'l, Inc., 679 F.2d 516, 521 (5th Cir. 1982). A market share of 90
percent or higher creates a presumption of monopolization, while it is doubtful whether a
60 percent market share would be enough, and 33 percent is generally considered
insufficient to constitute a monopoly. See id.; United States v. Aluminum Co. of Am., 148
F.2d 416, 424 (2d Cir. 1945). Dr. Puentes referred in his initial 2002 petition to Spohn's
"share of the hospital market in conjunction with the insurance network" and repeatedly
referred to Spohn's "dominant" market position in his responses to Spohn's motions for
summary judgment. On appeal, Dr. Puentes principally points to Frum's deposition
testimony which was attached to his responses to Spohn's motions for summary judgment. 
In that testimony, Frum stated that the System "retains about 65 percent market share of
inpatient discharges" in Nueces County. However, Dr. Puentes produced no actual
evidence regarding the market share of the Network for managed healthcare services in
the Corpus Christi area. Without any such evidence, Dr. Puentes cannot sustain an action
under subsection 15.05(b). Dimmitt Agri Indus., Inc., 679 F.2d at 521; Caller-Times Publ'g
Co., 826 S.W.2d at 580.

 Dr. Puentes notes that the TFEAA does not explicitly require a showing of market
share and urges us to conclude that a showing of market share is therefore unnecessary
to a successful antitrust action. However, we are precluded by precedent from construing
the statute so narrowly. Indeed, even the rule of reason, one of the fundamental tenets
of antitrust law, does not appear on the face of the statute but was implied into the statute
by courts at the direction of Congress. (8) See Nat'l Soc'y of Prof'l Eng'rs, 435 U.S. at 688
("The legislative history makes it perfectly clear that [Congress] expected the courts to give
shape to the [Sherman Act]'s broad mandate by drawing on common-law tradition."). Just 
as we are bound to implement the rule of reason in determining whether to invalidate a
restraint of trade, we must also enforce the requirement that market power be established
in order to maintain a monopoly action. See I.T.T. Grinnell Corp., 384 U.S. at 570-71;
Caller-Times Publ'g Co., 826 S.W.2d at 580.

 By his second issue, Dr. Puentes attempts to reframe the debate by contending that
the particular market considered by the trial court--the sale of managed healthcare
services in the Corpus Christi area--was not the "relevant market" for purposes of
determining whether Spohn's actions were illegal restraints of trade. Rather, according to
Dr. Puentes, the relevant market consists only of Network physicians; it therefore follows
that Spohn had absolute control and a complete monopoly in this market. We disagree
with Dr. Puentes's recharacterization of the relevant market.

 The "relevant market" is a combination of the relevant product market and the
relevant geographic market. C.E. Servs, Inc. v. Control Data Corp., 759 F.2d 1241, 1244
(5th Cir. 1985); Caller-Times Publ'g Co., Inc., 826 S.W.2d at 580. In determining the
relevant product market, "no more definite rule can be declared than that commodities
reasonably interchangeable by consumers for the same purpose make up that 'part of the
trade or commerce,' the monopolization of which may be illegal." United States v. E. I. Du
Pont de Nemours Co., 351 U.S. 377, 395 (1956). Products are generally in the same
market if they are reasonably interchangeable. Caller-Times Publ'g Co., Inc., 826 S.W.2d
at 584 n.13. (9)

 Here, it is undisputed that the services offered by the dozen or more managed
healthcare providers that compete with the Network in the Corpus Christi area are
"reasonably interchangeable" with the services provided by the Network itself. In fact, the
evidence was uncontroverted that Dr. Puentes could--and did--receive referrals, and
reimbursements for services provided as a result of those referrals, from competing
managed healthcare networks. We further note that it was Dr. Puentes's burden to
establish the relevant market, see C.E. Servs, Inc., 759 F.2d at 1244; nevertheless, he
does not point to any evidence produced in response to Spohn's motions for summary
judgment that is probative on this issue. Therefore, we cannot countenance Dr. Puentes's
attempt to shift the definition of the relevant market in this case.

 We conclude that the trial court did not err by granting Spohn's no-evidence motion
for summary judgment on the grounds that Dr. Puentes failed to produce evidence showing
Spohn constitutes a monopoly, that Spohn attempted to monopolize, or that Spohn
otherwise conspired, combined, or contracted in restraint of trade in the relevant market. (10) 
Dr. Puentes's two issues are overruled.

V. Conclusion

 The trial court's no-evidence summary judgment in favor of Spohn is affirmed.


 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and

filed this 11th day of June, 2009.
1. Appellee Spohn Health Network will be referred to as the "Network," and appellee Christus Spohn
Health System Corporation as the "System." Collectively, the appellees will be referred to simply as "Spohn."
2. The parties refer at various times to four amended original petitions filed by Dr. Puentes between
2002 and 2007; however, the record before this Court contains only the initial original petition filed by Dr.
Puentes on November 22, 2002.
3. Dr. Puentes's 2002 petition contained the following paragraph asserting a cause of action under the
TFEAA:


Defendants have violated the Texas Anti-Trust and Restraint of Trade statutes in that they
have refused to allow Plaintiff to obtain reimbursement for MRI and like services, upon a
referral basis for Network patients. Defendants have refused to allow Plaintiff to be
reimbursed for these services at its business location while protecting Defendant hospital
from competition. Because of Defendants['] share of the hospital market in conjunction with
the insurance network, Defendants through their joint enterprise have restrained trade and
restricted access to Plaintiff's services.
4. As noted supra note 2, Dr. Puentes's second amended petition does not appear in the record.
5. This motion was for "partial" summary judgment in that it only addressed Dr. Puentes's antitrust and
tortious interference causes of action.
6. On appeal, Dr. Puentes challenges the summary judgment orders solely as they relate to his claims
under the TFEAA. Accordingly, we may not disturb the judgments as they relate to his other causes of action. 
See Tex. R. App . P . 47.1; Martinez v. El Paso County, 218 S.W.3d 841, 844 (Tex. App.-El Paso 2007, pet.
dism'd) ("When reviewing a civil matter, an appellate court has no discretion to consider an issue not raised
in the appellant's brief.").
7. It is undisputed that Dr. Puentes's TFEAA claims allege violations of only either subsection 15.05(a)
or (b), or both, but not of any other provision of section 15.05. See, e.g., Tex. Bus. & Com. Code Ann. § 15.05
(c) (Vernon 2002) (prohibiting exclusive dealing contracts); id. § 15.05(d) (prohibiting mergers or acquisitions
that substantially lessen competition); id. § 15.05(e)(1) (prohibiting certain employment restrictions).
8. As Justice Stevens stated:


One problem presented by the language of [section] 1 of the Sherman Act is that it cannot
mean what it says. The statute says that "every" contract that restrains trade is unlawful. But
. . . restraint is the very essence of every contract; read literally, [section] 1 would outlaw the
entire body of private contract law. Yet it is that body of law that establishes the enforceability
of commercial agreements and enables competitive markets--indeed, a competitive
economy--to function effectively.


Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 687-88 (1978) (footnotes omitted); see United
States v. Topco Assocs., 405 U.S. 596, 606 (1972) ("Were [section] 1 to be read in the narrowest possible
way, any commercial contract could be deemed to violate it.").
9. The proscription against monopolies applies with equal force to both service and product markets. 
C.E. Servs., Inc. v. Control Data Corp., 759 F.2d 1241, 1245 n.1 (5th Cir. 1985).
10. Because we find that the trial court's no-evidence summary judgment was justified on these
grounds, we need not address the other grounds for no-evidence summary judgment asserted by Spohn. See
Tex R. App. P. 47.1; Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001). We also need not address
Spohn's traditional motion for summary judgment. See Tex. R. App. P. 47.1; Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 600 (Tex. 2004) (noting that, if the plaintiffs fail to produce more than a scintilla of evidence under
the no-evidence summary judgment burden, then there is no need to analyze whether plaintiff's proof satisfied
the traditional summary judgment burden).