06-4755-cv
Ross v. Bank of America N.A. (USA)

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: October 25, 2007                      Decided: April 25, 2008)

Docket No. 06-4755-cv

_____

ROBERT ROSS, ANDREA KUNE, WOODROW CLARK III, HERVE SENEQUIER, S. BYRON BALBACH JR., MATTHEW GRABELL, PAUL IMPELLEZZERI, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

— v .—

BANK OF AMERICA, N.A. (USA), CAPITAL ONE BANK, CAPITAL ONE F.S.B., J.P. MORGAN CHASE & CO., CHASE BANK USA, N.A., CITIGROUP, INC., CITIBANK (SOUTH DAKOTA), N.A., CITIBANK, USA N.A., CITICORP DINERS CLUB INC., UNIVERSAL BANK, N.A., UNIVERSAL FINANCIAL CORP., NOVUS CREDIT SERVICES, INC., DISCOVER FINANCIAL SERVICES, INC., DISCOVER BANK, HSBC FINANCE CORPORATION, MBNA AMERICA BANK, N.A., MBNA AMERICA BANK (DELAWARE), N.A., PROVIDIAN FINANCIAL CORPORATION, PROVIDIAN NATIONAL BANK, INC.,

*Defendants-Appellees*,

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY,

*Interested-Party.*

_____

Before:      LEVAL, SOTOMAYOR, AND B.D. PARKER, *Circuit Judges*.

_____

1

Plaintiffs-Appellants appeal from a final order of the United States District Court for the Southern District of New York (Pauley, *J.*), dismissing their antitrust suit for lack of standing under Article III of the United States Constitution.

VACATED and REMANDED for further proceedings.

––––––––––––––––––––

Merrill G. Davidoff, Berger & Montague, P.C., Philadelphia, PA (Peter Nordberg, Charles Pearsall Goodwin, David A. Langer; Bonny E. Sweeney, Joseph D. Daley, Christopher M. Burke, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA; Dennis Stewart, Hulett Harper Stewart, San Diego, CA, *on the brief*), *Counsel of Record for Plaintiffs-Appellants*

Robert D. Wick, Covington & Burling LLP, Washington, DC (Charles E. Buffon, Virginia M. Rosado Desilets; Peter E. Greene, Cyrus Amir-Mokri, Peter S. Julian, Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, *on the brief*), *for Defendants-Appellees* JPMorgan Chase & Co. and Chase Bank USA, N.A.

Paul W. Bartel, II, Davis Polk & Wardwell, New York, NY (Arthur F. Golden, *on the brief*), *for Defendants-Appellees* Discover Financial Services, LLC (sued under its former name, Discover Financial Services, Inc.), Discover Bank and Novus Credit Services Inc.

Benjamin R. Nagin, Sidley Austin LLP, New York, NY (David F. Graham, Robert N. Hochman, Eric H. Grush, Sidley Austin LLP, Chicago, IL; John K. Van De Weert, Sidley Austin LLP, Washington, DC, *on the brief*), *for Defendants-Appellees* Citigroup Inc., Citibank (South Dakota), N.A., for itself and as successor-in-interest to Universal Bank, N.A. and Citibank USA, National Association;

2

Universal Financial Corp., and Citicorp Diners Club Inc.

MARK P. LADNER, Morrison & Foerster LLP, New York, NY (William R. Wade-Gery, Michael H. Gifford; Christopher R. Lipsett, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY; Daniel Squire, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC, *on the brief*), *for Defendants-Appellees* Bank of America, N.A. (USA), MBNA America Bank, N.A., and MBNA America (Delaware), N.A.

ANDREW FRACKMAN, O'Melveny & Myers LLP, New York, NY (Edward D. Hassi, John Tully, *on the brief*), *for Defendants-Appellees* Capital One Bank and Capital One, F.S.B.

GEORGE A. CUMMING, JR., Morgan, Lewis & Bockius LLP, San Francisco, CA (Kent M. Roger; Harry T. Robins, Morgan, Lewis & Bockius LLP, New York, NY, *on the brief*), *for Defendants-Appellees* HSBC Finance Corporation and HSBC Bank Nevada, N.A.

ALEXANDER GEIGER, Geiger and Rothenberger, LLP, New York, NY (Burt M. Rublin, Edward D. Rogers, Ballard Spahr Andrews & Ingersoll LLP, Philadelphia, PA, *on the brief*), *for Defendants-Appellees* Providian Financial Corp. and Providian National Bank

––––––––––––––––––

BARRINGTON D. PARKER, *Circuit Judge*:

This appeal arises from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*), dismissing Plaintiffs-Appellants' antitrust claims for failure to establish standing under Article III of the United States Constitution. We consider whether mandatory arbitration clauses found in credit card contracts issued by Defendants-Appellees,

3

assuming they are the product of illegal collusion among credit providers, give rise to Article III "injury in fact."

I.

Defendants-Appellees (collectively, "the banks") are credit card issuing banks that have entered into credit agreements with Plaintiffs-Appellants, who are individual credit cardholders. These agreements include provisions that impose arbitration as the sole method of resolving disputes relating to the credit accounts and disallow, among other things, class actions. Defendants-Appellees Discover Financial Services, LLC, Novus Credit Services Inc., and Discover Bank ("the Discover Appellees") proceed separately; they contend that their cardholder agreements do *not* contain mandatory arbitration clauses and class action prohibitions. Rather, Discover and Novus cardholders are given a window during which they can opt out of mandatory arbitration. However, the Discover Appellees join the other banks in arguing that the cardholders lack Article III standing, the principal issue in this appeal. For the purpose of the standing question, then, we consider Defendants-Appellees collectively.

In 2005, the cardholders filed a putative class action lawsuit against the banks. The cardholders alleged that the banks (with other co-conspirators, including American Express and Wells Fargo) illegally colluded to force cardholders to accept mandatory arbitration clauses in their cardholder agreements. Assuming the facts asserted in the Complaint to be true, "[b]eginning before late 1998 or early 1999, Defendants began communicating with each other and their co-conspirators concerning the imposition and use of mandatory arbitration clauses." After preliminary meetings and communications, the banks formed an "Arbitration Coalition" to

4

recruit other credit card issuers into using mandatory arbitration clauses. Over the next four years, the Arbitration Coalition held more meetings, shared plans for the adoption of arbitration clauses, and spun off additional working groups. Ultimately, "Defendants jointly forced unwilling and unaware cardholders to accept arbitration clauses and class action prohibitions on a 'take-it-or-leave-it basis' through the joint exercise of immense market power."

The cardholders argue that the banks' collusion violated the antitrust laws. According to Plaintiffs-Appellants, the banks conspired in order "to immunize themselves from economic responsibility for antitrust and consumer protection violations, and to reap supra-competitive profits from their cardholders." The cardholders also contend that the alleged collusion produced several market effects, including the creation of a "non-price trade advantage over cardholders" and the removal of any economic incentive for the banks to comply with antitrust and other laws, thereby shifting the risk and cost of their non-compliance to cardholders. The collusion is also alleged to have resulted in an increase in dispute-related costs to individual cardholders (including monitoring the banks' conduct and seeking relief through costly individual arbitrations), the removal of all non-arbitration credit cards from the market, thereby depriving the cardholders of meaningful choice in the area of credit card services, and a diminution in the overall quality of credit services offered to consumers.

The Complaint sets forth two antitrust claims against the banks. The first claim alleges a conspiracy to impose mandatory arbitration clauses in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The second claim alleges that the banks participated in a group boycott by refusing to issue cards to individuals who did not agree to arbitration, also in violation of Section

1. The cardholders seek to enjoin the banks from continuing their alleged collusion relating to arbitration clauses, to invalidate existing mandatory arbitration clauses, and to force the banks to withdraw all pending motions to compel arbitration. *See* 15 U.S.C. § 26.

On November 10, 2005, Defendants-Appellees filed three dispositive motions. In the first two motions, the banks and the Discover Appellees separately moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that the cardholders lack Article III standing and antitrust standing to assert their claims. With regard to Article III standing, Defendants-Appellees maintain that because the cardholders have not yet initiated a dispute that was forced, against their wishes, into arbitration, they have yet to be injured, and therefore present no live case or controversy. In a third motion, the non-Discover Appellees sought to stay the litigation in favor of arbitration.

On September 20, 2006, the district court dismissed the Complaint on a single ground: the cardholders' failure to establish Article III standing. *In re Currency Conversion Fee Antitrust Litig.*, No. 05 Civ. 7116 (WHP), 2006 U.S. Dist. LEXIS 66986 (S.D.N.Y. Sept. 20, 2006). The district court noted certain of the antitrust injuries asserted by the cardholders, but ultimately agreed with the banks that "these injuries are entirely speculative and, therefore, insufficient to establish Article III standing." *Id.* at *9, *12-13. Specifically, according to the district court, the cardholders' injuries are "contingent on their speculation that someday (1) Defendants may engage in misconduct; (2) the parties will be unable to resolve their differences; (3) Plaintiffs may commence a lawsuit; (4) the dispute will remain unresolved; and (5) Defendants will seek to

6

invoke arbitration provisions." *Id.* at *14-15.  Further, any "alleged anticompetitive effects are inchoate." *Id.* at *16.

The cardholders appeal and we vacate the judgment and remand.

## II.

It is well settled that "[t]he federal judicial power extends only to actual cases and controversies; federal courts are without jurisdiction to decide abstract or hypothetical questions [of] law." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 46 (2d Cir. 2006); *see* U.S. Const. art. III, § 2.  Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal quotation marks omitted).  To establish constitutional standing under Article III, "a plaintiff must have suffered an 'injury in fact' that is 'distinct and palpable'; the injury must be fairly traceable to the challenged action; and the injury must be likely redressable by a favorable decision." *Denney*, 443 F.3d at 263 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Injury in fact is a low threshold, which we have held "need not be capable of sustaining a valid cause of action," but  "may simply be the fear or anxiety of future harm." *Id.* at 264.  "Moreover, the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate standing." *Id.* at 265.  The burden rests on the party

7

asserting jurisdiction to clearly allege facts demonstrating standing.[1]  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

III

We review the dismissal of claims for lack of standing *de novo*.  *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 259 (2d Cir. 2006); *Denney*, 443 F.3d at 262.  We conclude that the district court erred in holding that the cardholders lacked Article III standing because they had not suffered an injury in fact.

The cardholders have adequately alleged antitrust injuries in fact.  The Complaint asserts that, as a result of an illegal conspiracy and group boycott, the cardholders have been subjected to suppressed competition and "deprived of any meaningful choice on a critical term and condition

---

[1]Besides demonstrating Article III standing, an antitrust plaintiff must also establish antitrust standing.  *See Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 290-92 (2d Cir. 2006).  First, the plaintiff must show that he suffered an "antitrust injury," which is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Id.* at 290 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)) (internal quotation marks omitted).  A court must also consider other factors relevant to standing (sometimes called the "efficient enforcer" factors), including:

> (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries.

*Id.* at 290-91 (quoting *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 66 (2d Cir. 1988)) (internal quotation marks omitted).

A court proceeds to an antitrust standing analysis only after Article III standing has been established.  *See, e.g.*, *Kochert v. Greater Lafayette Health Servs., Inc.*, 463 F.3d 710, 714-16 (7th Cir. 2006) (addressing Article III standing, then antitrust standing, in an antitrust suit).  The district court did not reach antitrust standing in this case, and the parties agree that we should not examine it on appeal.

of their general purpose card accounts." Further, the district court recognized that "reduced choice and diminished quality of credit card services" were among the injuries asserted by the cardholders. *In re Currency Conversion*, 2006 U.S. Dist. LEXIS 66986, at *9. The Supreme Court has opined that one form of antitrust injury is "[c]oercive activity that prevents its victims from making free choices between market alternatives." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 528 (1983); *see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 127 S.Ct. 2705, 2736 (2007) (Breyer, J., dissenting) (identifying "providing consumers with a free choice" about whether to choose lower prices or more services as "a basic antitrust objective"); *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 459 (1986) ("A refusal to compete with respect to the package of services offered to customers, no less than a refusal to compete with respect to the price term of an agreement, impairs the ability of the market to advance social welfare by ensuring the provision of desired goods and services to consumers at a price approximating the marginal cost of providing them."). The Complaint alleges that reduced choice and diminished quality in credit services result directly from the banks' illegal collusion to constrict the options available to cardholders. These harms are sufficiently "actual or imminent," as well as "distinct and palpable," to constitute Article III injury in fact. *Denney*, 443 F.3d at 264.

The district court appears largely to have overlooked the cardholders' antitrust arguments, instead viewing their claims, at the banks' urging, merely as challenges to the arbitration provisions in their credit agreements. For example, the district court opined that "Plaintiffs' claims challenge arbitration clauses that were not invoked against them when they commenced

9

this litigation.  A plaintiff has no Article III standing to challenge an arbitration clause that has not been invoked . . . ."  *In re Currency Conversion*, 2006 U.S. Dist. LEXIS 66986, at \*13-14.  In short, the court agreed with the banks that "until the arbitration clauses are invoked against Plaintiffs, they are dormant contract provisions incapable of creating the requisite Article III injury-in-fact."  *Id.* at \*13.  This conclusion was an error and beside the mark in terms of the antitrust injuries that the cardholders have asserted.

The harms claimed by the cardholders, which lie at the heart of their Complaint, are injuries to the market from the banks' alleged collusion to impose a mandatory term in cardholder agreements, not injuries to any individual cardholder from the possible invocation of an arbitration clause.  The antitrust harms set forth in the Complaint – for example, the reduction in choice for consumers, many of whom might well prefer a credit card that allowed for more methods of dispute resolution – constitute present market effects that stem directly from the alleged collusion and are distinct from the issue of whether any cardholder's mandatory arbitration clause is ever invoked.  The reduction in choice and diminished quality of credit services to which the cardholders claim they have been subjected are present anti-competitive effects that constitute Article III injury in fact.

The banks argue that this absence of choice is merely a harm to a "subjective preference." This mischaracterizes the cardholders' claims.  According to the cardholders, the conspiracy among the banks was designed to limit the choice of terms offered to cardholders, resulting in at least two ways in their receiving objectively less valuable cards than would otherwise have been the case.  First, because the banks conspired not to offer cards permitting class actions, the

10

cardholders will be forced to expend time and legal fees to monitor the legality of the banks' behavior, whereas if the cardholders had access to a card that permitted class actions, they would have the option of relying on motivated class action attorneys to perform this function. If the cardholders chose not to monitor the banks – which would perhaps be more likely because, as the Complaint observes, actions that result in significant aggregate revenue to the banks (concerning, *e.g.*, late fees, overlimit fees, foreign transaction fees, APR, etc.) generally harm individual consumers in only small amounts – they would still lose the services of class action attorneys. Either way, the cardholders would have been forced to accept a less valuable card as a result of the banks' alleged collusion.

Second, the alleged conspiracy to limit the cardholders to cards that require arbitration of disputes also diminished the present value of the cards offered to the cardholders. A card that limits the holder to arbitration is less valuable (all other factors being equal) than a card that offers the holder a choice between court action or arbitration. Even assuming that the cardholders might be able to void that limitation when an actual dispute arises by opposing the banks' motion to compel arbitration via a claim of antitrust collusion, that possibility is more theoretical than real for two reasons. The cost of litigating the antitrust issue when the particular dispute arises will almost certainly be disproportionate to the dispute. (A plaintiff will not spend a hundred thousand dollars in legal fees to litigate a five thousand dollar dispute.) Furthermore, the cardholders' ability to prove the illegal collusion may well have evaporated with the passage of time, due to the deaths, retirements, changes of jobs, and fading memories of the participants and observers of the conspiratorial meetings, as well as the loss and destruction of documents.

11

We believe that at least in these two independent respects the cardholders have alleged an illegal conspiracy that resulted in a present injury by requiring them to accept less valuable cards than would otherwise have been available, but for the illegal collusion.

The banks also contend that reduced consumer choice does not constitute injury in fact because "[t]he antitrust laws do not protect consumer choice *per se*; they protect consumer choice where doing so promotes the efficient allocation of goods and services in the marketplace, *i.e.*, has an ascertainable economic impact." Quoting the Ninth Circuit, the banks contend that "an act is deemed *anticompetitive* under the Sherman Act only when it harms both allocative efficiency *and* raises the prices of goods above competitive levels or diminishes their quality." *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995). The banks admit, however, that in making this argument, they stray into the realm of *antitrust* standing, rather than Article III standing, analysis. Antitrust standing demands a much more detailed and focused inquiry into a plaintiff's antitrust claims than constitutional standing. *See, e.g.*, *Kochert*, 463 F.3d at 715 (disagreeing with the district court's conclusion that the antitrust plaintiff lacked Article III standing, and opining that the question of "whether any of defendants' actions were anticompetitive" is more appropriately assessed "in the context of antitrust standing and antitrust injury."); *Lucas Auto. Eng'g, Inc. v. Bridgestone/Firestone, Inc.*, 140 F.3d 1228, 1232 (9th Cir. 1998) ("If the plaintiff meets the requirements for standing under Article III, the court must then determine whether the plaintiff also meets 'the more demanding standard for *antitrust* standing.'") (quoting *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997)); *Fla. Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir. 1997) ("Antitrust standing requires more

than the 'injury in fact' and the 'case or controversy' required by Article III of the Constitution.") (citation omitted); *see supra* n.1.

We do not address the question of whether the cardholders' alleged injuries would survive an antitrust standing analysis. In our view, the cardholders have pled "actual and imminent" harms sufficient to establish Article III injury in fact. There is no heightened standard for pleading an injury in fact sufficient to satisfy Article III standing simply because the alleged injury is caused by an antitrust violation. *See South Austin Coalition Cmty. Council v. SBC Commc'ns Inc.*, 274 F.3d 1168, 1170-71 (7th Cir. 2001) (in rejecting a district court's dismissal of antitrust claims as "too speculative and vague," writing that "[c]omplaints need not be elaborate, and in this respect injury (and thus standing) is no different from any other matter that may be alleged generally.") (citing *Lujan*, 504 U.S. at 561); *cf. Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). We recognize that *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), requires a heightened pleading standard "in those contexts where [factual] amplification is needed to render [a] claim *plausible*," *Iqbal v. Hasty*, 490 F.3d 143, 158 (2d Cir. 2007), including, most notably, the antitrust context. *See Bell Atl. Corp.*, 127 S. Ct. at 1965 ("In applying these general standards to a § 1 claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of illegal agreement.") (footnote omitted).  However, plausibility is not at issue at this point, as we are considering only Article III standing.

We conclude that the district court erred in holding that the cardholders failed to allege an injury in fact sufficient to confer Article III standing to pursue their claims.[2]

IV

The banks further contend that the cardholders' claims are not ripe for adjudication because the cardholders are not faced with a sufficiently imminent threat of injury, and, as a prudential matter, their antitrust claims would better be entertained at a later time.  We disagree.

The requirement that a dispute must be ripe "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).  Furthermore, "[r]ipeness overlaps in some respects with standing, 'most notably in the shared requirement that the [plaintiff's] injury be imminent rather than conjectural or hypothetical.'" *Bronx Household of Faith v. Bd. of Educ.*, 492 F.3d 89, 111 (2d Cir. 2007) (Leval, J., concurring) (quoting *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225 (2d Cir. 2006)).  We have already held that the antitrust harms asserted by the cardholders are sufficiently "actual and imminent" to constitute Article III injury in fact. For the same reasons, we find that these alleged injuries are not merely speculative or hypothetical, and that judicial review of the cardholders' claims at this time is appropriate.

---

[2]We express no view on the other two prongs of constitutional standing, causation and redressability, because they were not considered below, were not briefed to this Court, and are better analyzed in the first instance by the district court.

14

Neither do we believe that the cardholders' claims, under the doctrine of prudential ripeness, would better be deferred for later review. *See Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003) ("[W]hen a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay."). The injuries alleged by the cardholders are present, ongoing harms that continue to affect the credit market as long as consumer choice and the quality of credit services offered are artificially suppressed. For these reasons, the cardholders' claims are ripe for adjudication.

V

The Discover Appellees urge us to affirm the district court's judgment as to the cardholders' claims against them, arguing that because their cardholder agreements allow individuals to opt out of mandatory arbitration, they do not cause any antitrust injuries. Because the district court disposed of all of the cardholders' claims on standing grounds, it did not examine the specific ramifications of the Discover Appellees' cardholder agreements. We remand Plaintiffs-Appellants' claims against the Discover Appellees to afford the district court the opportunity, in the first instance, to examine the opt-out provisions and to determine whether the Discover Appellees should be treated differently from the other banks.

\* \* \*

For the foregoing reasons, we VACATE the judgment of the district court and REMAND for further proceedings consistent with this opinion.

15