**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROB BRANTLEY, DARRYN COOKE,
WILLIAM and BEVERLEY COSTLEY,
PETER G. HARRIS, CHRISTIANA
HILLS, MICHAEL B. KOVAC,
MICHELLE NAVARRETTE, JOY
PSACHIE and JOSEPH VRANICH,
individually and on behalf of all
others similarly situated,
             *Plaintiffs-Appellants,*

             v.

NBC UNIVERSAL, INC., VIACOM
INC., THE WALT DISNEY COMPANY,
FOX ENTERTAINMENT GROUP, INC.,
TIME WARNER INC., TIME WARNER
CABLE INC., COMCAST CORPORATION,
COMCAST CABLE COMMUNICATIONS,
LLC, COXCOM, INC., THE DIRECTV
GROUP, INC., ECHOSTAR SATELLITE
L.L.C., and CABLE VISION SYSTEMS
CORPORATION,
             *Defendants-Appellees.*

No. 09-56785

D.C. No.
CV 07-6101 CAS
VBK

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
March 7, 2011—Pasadena, California

Filed June 3, 2011

Before: Pamela Ann Rymer, Consuelo M. Callahan, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

## COUNSEL

Maxwell M. Blecher, Esq., Bletcher & Collins, PC, Los Angeles, California, for plaintiffs-appellants Rob Brantley, et al.

Glenn D. Pomerantz, Esq., Munger Tolles & Olson LLP, Los Angeles, California, and Arthur J. Burke, Esq., Davis Polk & Wardwell LLP, Menlo Park, California, for defendants-appellees NBC Universal, Inc., et al.

---

## OPINION

IKUTA, Circuit Judge:

This case is a consumer protection class action masquerading as an antitrust suit. Plaintiffs are a putative class of retail cable and satellite television subscribers. They brought suit against television programmers (Programmers)[1] and distributors (Distributors)[2] alleging that Programmers' practice of selling multi-channel cable packages violates Section 1 of the

---

[1]Programmer Defendants include NBC Universal, Inc., Viacom, Inc., The Walt Disney Company, Fox Entertainment Group, Inc., and Turner Broadcasting System, Inc.

[2]Distributor Defendants include Time Warner Cable Inc., Comcast Corporation, Comcast Cable Communications, LLC, CoxCom, Inc., The DIRECTV Group, Inc., EchoStar Satellite L.L.C., and Cablevision Systems Corporation.

Sherman Act, 15 U.S.C. § 1. In essence, these consumers seek to compel programmers and distributors of television programming to sell each cable channel separately, thereby permitting consumers to purchase only those channels that they wish to purchase, rather than paying for multi-channel bundles, as occurs under current market practice. Plaintiffs appeal the dismissal with prejudice of their complaint for failure to state a claim for relief under Section 1 of the Sherman Act. We affirm.

I

The television programming industry can be divided into upstream and downstream markets. In the upstream market, programmers NBC Universal and Fox Entertainment Group own television programs (such as "Law and Order") and television channels (such as NBC's Bravo, MSNBC, and Fox Entertainment Group's Fox News Channel and FX) and sell them wholesale to distributors. In the downstream retail market, distributors such as Time Warner and Echostar sell the programming channels to consumers.[3]

The nucleus of plaintiffs' claims regarding the nature of the Programmers' and Distributors' alleged antitrust violation has remained constant throughout the various iterations of their complaint. According to plaintiffs, Programmers have two categories of programming channels: "must-have," high-demand channels with a large number of viewers, and a group of less desirable, low-demand channels with low viewership. Plaintiffs allege that Programmers derive market power from their "must-have" channels because no Distributor can market and sell a programming package to consumers without those channels. Distributors contend that Programmers exploit this market power by bundling or tying the high and low demand

---

[3]Plaintiffs acknowledge three categories of distributors, namely, cable providers, satellite providers, and telephone companies. Plaintiffs have filed suit only against the cable and satellite providers.

channels together for sale to Distributors, thereby precluding Distributors from purchasing single "must-have" channels and (according to plaintiffs) forcing Distributors in turn to sell only multi-channel packages to consumers. Plaintiffs contend that in the absence of Programmers' bundling practices, Distributors would offer single channels for sale (often referred to as "a la carte programming"), and consumers could purchase only those channels that they wish to watch. Accordingly, plaintiffs claim, the challenged bundling practice limits Distributors' method of doing business and reduces consumer choice, while raising prices.

Based on these allegations, Plaintiffs claim that the Programmers and Distributors are in violation of Section 1 of the Sherman Act. Plaintiffs seek monetary damages under 15 U.S.C. § 15.[4] Plaintiffs also seek an injunction to compel Programmers to make channels available on an individual, non-bundled basis.

The district court dismissed plaintiffs' first complaint without prejudice on the ground that plaintiffs failed to show that their alleged injuries were caused by an injury to competition.

---

[4]Section 15 states in pertinent part:

> Except as provided in subsection (b) of this section, any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee. The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment, or for any shorter period therein, if the court finds that the award of such interest for such period is just in the circumstances.

15 U.S.C. § 15(a).

In their amended complaint, plaintiffs alleged that Programmers' practice of selling bundled cable channels foreclosed independent programmers from entering and competing in the upstream market for programming channels. The district court subsequently denied defendants' motion to dismiss, holding that plaintiffs had adequately pleaded both injury to competition and antitrust standing.

After preliminary discovery efforts on the question whether the Programmers' practices had excluded independent programmers from the upstream market, the plaintiffs decided to abandon this approach.[5] Pursuant to a stipulation among the parties, Plaintiffs filed a third amended complaint deleting all allegations that the Programmers and Distributors' bundling practices foreclosed independent programmers from participating in the upstream market, along with a motion requesting the court to rule that plaintiffs did not have to allege that potential competitors were foreclosed from the market in order to defeat a motion to dismiss. The parties also agreed that Programmers and Distributors could file a motion to dismiss, and that if Programmers and Distributors prevailed, this third complaint would be dismissed with prejudice. The district court entered an order on October 15, 2009 granting Programmers' and Distributors' motion to dismiss the Third Amended Complaint with prejudice because plaintiffs failed to allege any cognizable injury to competition. The district court also denied plaintiffs' motion to rule on the question whether allegations of foreclosed competition are required to state a Section 1 claim. Plaintiffs timely appeal.

II

**[1]** Section 1 of the Sherman Act prohibits "[e]very con-

---

[5]Programmers and Distributors claim that plaintiffs decided to discontinue discovery after preliminary review showed there was no evidence to support their claim that the bundling practices foreclosed competitors from the upstream market.

tract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U.S.C. § 1. While the language of Section 1 could be interpreted to proscribe all contracts, *see, e.g.*, *Bd. of Trade of City of Chicago v. United States*, 246 U.S. 231, 238 (1918), the Supreme Court has never "taken a literal approach to [its] language," *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Rather, the Court has repeatedly observed that Section 1 "outlaw[s] only unreasonable restraints." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).

We generally evaluate whether a practice restrains trade in violation of Section 1 under the "rule of reason."[6] *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007). "In its design and function the rule [of reason] distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Id.* at 886. The parties do not dispute that the rule of reason applies in this case.

In order to state a Section 1 claim under the rule of reason, plaintiffs must plead facts which, if true, will prove "(1) a contract, combination or conspiracy among two or more persons or distinct business entities; (2) by which the persons or entities intended to harm or restrain trade or commerce among the several States, or with foreign nations; (3) which actually injures competition." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008); *see also Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1445 (9th Cir. 1988) (same). In order

---

[6]The Supreme Court has identified a small number of restraints of trade "that would always or almost always tend to restrict competition and decrease output," *see Bus. Elec. Corp v. Sharp Elec. Corp.*, 485 U.S. 717, 723 (1988) (internal quotation omitted), such as horizontal agreements among competitors to fix prices, *see Texaco*, 547 U.S. at 5, or to divide markets, *see Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49-50 (1990) (per curiam). The Court deems these restraints to be per se unlawful. *See Bus. Elec.*, 485 U.S. at 723. These practices are not at issue here.

to establish the third element, plaintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

In addition to pleading these three elements, an antitrust plaintiff must also plead facts that if taken as true would allow plaintiffs to recover for an antitrust injury, which is to say "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1102 (9th Cir. 1999) (internal quotation omitted); *see also Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 344 (1990) (observing that antitrust injury is distinct from injury to competition and that "proof of a[n antitrust] violation and of antitrust injury are distinct matters that must be shown independently") (quoting Phillip E. Areeda & Herbert Hovenkamp, Fundamentals of Antitrust Law ¶ 334.2c, at 330 (1st ed. Supp. 1989)).

Courts have identified two scenarios constituting an injury to competition for purposes of the third element of a Section 1 claim. First, agreements between competitors to harm or exclude other competitors (referred to as "horizontal collusion") are deemed to injure competition because they insulate the colluding parties from horizontal competition. *See F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986); *see also Realcomp II, Ltd. v. FTC*, 635 F.3d 815 (6th Cir. 2011) (holding that a horizontal agreement among "seven associations of competing real-estate brokers" relating to a web advertising policy "unreasonably restrained competition in the market for the provision of residential real-estate brokerage services."). Horizontal collusion is not at issue here.

**[2]** Second, agreements that foreclose competitors from entering the market are likewise deemed to injure competition. *See, e.g.*, *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 n.1 (9th Cir. 2010);

*Oltz*, 861 F.2d at 1447. Vertical restraints on trade, i.e., when a supplier imposes restrictions or limitations on a distributor (such as vertical price-fixing, territorial restrictions, tying the sale of two or more goods, and bundling), may constitute this sort of injury to competition under certain circumstances. A vertical restraint without more, however, does not constitute an injury to competition. *Austin v. McNamara*, 979 F.2d 728, 738 (9th Cir. 1992). A plaintiff alleging that a vertical restraint results in increased prices or reduced consumer choice is still required to identify a specific injury to competition. *See Hirsh v. Martindale-Hubbell, Inc.*, 674 F.2d 1343, 1349 n.19 (9th Cir. 1982) ("[I]ntru[sion] upon consumers' freedom of choice by compelling the purchase of unwanted products . . . has been implicitly rejected by the Supreme Court as a sufficient independent basis for antitrust liability.").

[3] Two types of vertical restraints are potentially at issue here, tying and bundling. Tying is defined as an arrangement where a supplier agrees to sell a customer a product, but "only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5-6 (1958). The "tied" product is typically from a different but interdependent market (i.e. printer and printer cartridges). Such tying agreements can constitute an injury to competition when "the seller has market power over the tying product," and the seller "can leverage this market power through tying arrangements to exclude other sellers of the tied product." *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 912 (9th Cir. 2008).[7] "Bundling"

---

[7]A tying arrangement may constitute a per se violation of the Sherman Act if the plaintiff proves "(1) that the defendant tied together the sale of two distinct products or services; (2) that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume of commerce in the tied product market." *Cascade Health Solutions*, 515 F.3d at 913 (internal quotation omitted). The parties do not allege that the bundling practice in this case is a per se antitrust violation.

is defined as "the practice of offering, for a single price, two or more goods or services that could be sold separately." *Id.* at 884. Bundling can constitute an injury to competition when a bundler is able to use discounting, for example, to "exclude rivals who do not sell as great a number of product lines." *Id.* at 897; *see id.* at 910 (holding, in effect, that to prove that a bundled discount constituted an antitrust violation, the plaintiff must establish that the defendant sold the product below cost).

## III

We consider plaintiffs' complaint in light of these principles. We review de novo a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Kendall*, 518 F.3d at 1046. "In order successfully to allege injury to competition, a section one claimant may not merely recite the bare legal conclusion that competition has been restrained unreasonably." *Lee Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 507-08 (9th Cir. 1989). Rather, a claimant must, at a minimum, sketch the outline of the antitrust violation with allegations of supporting factual detail. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 736 (9th Cir. 1987).

Although plaintiffs' complaint alleges a type of vertical restraint imposed by upstream Programmers on downstream Distributors, plaintiffs disavow any intent to allege that the practices engaged in by Programmers and Distributors foreclosed rivals from competing. Nor can we construe the description of the vertical restraints at issue as alleging this sort of injury to competition. If the restraint at issue here were characterized as a tying arrangement, the tying product would be the "must-have" channels, and the tied product would be the channels that consumers would not otherwise purchase. *See United States v. Loew's, Inc.*, 371 U.S. 38 (1962) (discussing the block-booking and tying of bad movies to good movies), *abrogated in part by Ill. Tool Works Inc. v. Indep.*

*Ink, Inc.*, 547 U.S. 28 (2006). However, the complaint does not allege that Programmers' practice of selling tied "must-have" and low-demand channels excludes other sellers of low-demand channels from the market.[8] Nor does the complaint allege that the Programmers' bundling arrangement prevented any competitors from participating in either the upstream or downstream market.

Plaintiffs instead present an alternative theory as to how their complaint adequately alleges injury to competition. Specifically, they argue that the sale of multi-channel packages harms consumers by (1) limiting the manner in which Distributors compete with one another because Distributors are unable to offer a la carte programming, (2) reducing consumer choice, and (3) increasing prices. These allegations do not state a Section 1 claim.

**[4]** First, limitations on the manner in which Distributors compete with one another do not, without more, constitute a cognizable injury to competition. *See Bd. of Trade*, 246 U.S. at 238 ("Every agreement concerning trade, every regulation of trade, restrains. To bind, to restrain, is of their very essence."). In *Leegin*, the Supreme Court made clear that even in the face of clear limitations on distributors' ability to compete, proof of competitive harm is required to state a cognizable antitrust claim. 551 U.S. at 898; *see also Loew's*, 371 U.S. at 44-45 (holding that tying agreements "are an object of antitrust concern for two reasons—they may force buyers into giving up the purchase of substitutes for the tied product, and they may destroy the free access of competing suppliers of the tied product to the consuming market") (citations omitted). Plaintiffs do not identify such harm here.

**[5]** Nor do allegations regarding harm to consumers, either in the form of reduced choice or increased prices, state a Sec-

---

[8]Thus, there is effectively "zero foreclosure" of competitors. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1090-91 (9th Cir. 2009).

tion 1 claim. The Supreme Court has noted that both are "fully consistent with a free, competitive market," *Ill. Tool*, 547 U.S. at 44-45, and are therefore insufficient to establish an injury to competition. Thus even vertical agreements that prohibit retail price reductions and result in higher consumer prices, commonly referred to as resale price maintenance, are not unlawful absent a further showing of anticompetitive conduct. *See Leegin*, 551 U.S. at 897. We have drawn the same conclusion. *See Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477-78 (9th Cir. 1997) (holding that a kick-back scheme that raised prices in violation of ERISA did not violate the antitrust laws because it did not restrain competition).

**[6]** Here, the complaint's allegations of reduced choice and increased prices address only the element of antitrust injury (whether the consumers have standing because they suffered the sort of injury that flows from an antitrust violation), not whether the plaintiffs have satisfied the pleading standard for an actual violation.[9] Although plaintiffs may be required to purchase bundles that include unwanted channels in lieu of purchasing individual cable channels, antitrust law recognizes the ability of businesses to choose the manner in which they do business absent an injury to competition. *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 129 S. Ct. 1109, 1118 (2009).

Plaintiffs' reliance on *Loew's*, 371 U.S. 38, to support their argument that conduct that reduces consumer choice is sufficient to state an antitrust claim is unavailing. In *Loew's*, the United States brought antitrust actions against six major film

---

[9]Plaintiffs claim that *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1004 (9th Cir. 2008), supports their argument that reduced consumer choice and increased prices is sufficient to establish an injury to competition. Plaintiffs are mistaken: *Theme Promotions* held only that such injuries established an antitrust violation, not that they constituted an injury to competition. Rather, the defendants' right of first refusal agreements, which had "foreclosed competition in a substantial share of the market," caused the injury to competition in that case. *Id.* at 1001-03. *Theme Promotions* is therefore inapposite.

distributors, alleging that the defendants had conditioned the license or sale of one or more feature films upon the acceptance by television stations of a package or block containing one or more unwanted or inferior films. *Id.* at 40. The Court observed that the restraint was an antitrust violation where the movie studios's block booking forced the television stations to forego purchases of movies from other distributors. *Id.* at 49. Thus, the injury in *Loew*'s was to competition, not to the ultimate consumers.[10]

[7] Finally, we address plaintiffs' contention that because most or all Programmers and Distributors engage in this bundling practice, we should hold that in the aggregate, the practice constitutes an injury to competition. Certainly circumstances might arise in which competition was injured or reduced due to a widely applied practice that harms consumers. *See Leegin*, 551 U.S. at 897 (indicating that vertical restraints, such as resale price maintenance, "should be subject to more careful scrutiny" if the practice is adopted by many competitors). But the plaintiffs here have not explained how competition (rather than consumers) was injured by the widespread bundling practice. The complaint included no allegations that Programmers' sale of cable channels in bundles has any effect on other programmers' efforts to produce competitive programming channels or on distributors' competition on cost and quality of service. In the absence of any allegation of injury to competition, as opposed to injuries to consumers, we conclude that plaintiffs have failed to state a claim for an antitrust violation. *See also Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930-31 (4th Cir. 1990) (finding that aggregating a defendant's acts, none of which was anticompetitive individually, did not demonstrate an antitrust violation).

---

[10]Plaintiffs also cite *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217 (2d Cir. 2008), for the proposition that reduced choice and increased prices are adequate to state a Section 1 claim, but that case is inapposite because it involved allegations of horizontal collusion, a fact not alleged by the Plaintiffs in this case, and pertained to standing. *See id.* at 223, 225.

**AFFIRMED.**