14-1610(L)
Ross v. Citigroup, Inc., et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of November, two thousand fifteen.

PRESENT: DENNIS JACOBS,
PIERRE N. LEVAL
GERARD E. LYNCH,
<u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - - - -X
ROBERT ROSS, on behalf of himself and all others similarly situated, ANDREA KUNE, WOODROW CLARK, S. BYRON BALBACH, JR., MATTHEW GRABELL, PAUL IMPELLEZZERI, on behalf of themselves and all others similarly situated, RICHARD MANDELL, RANDAL WACHSMUTH,
<u>Plaintiffs-Appellants</u>,

-v.-                                                    14-1610(L)
                                                        14-1616(con)

CITIGROUP, INC., CITIBANK (SOUTH DAKOTA), N.A., CITICORP DINERS CLUB, CITIBANK USA, N.A., UNIVERSAL BANK, N.A., UNIVERSAL FINANCIAL CORPORATION, DISCOVER FINANCIAL SERVICES, INC., DISCOVER BANK, AMERICAN EXPRESS CO.,

**AMERICAN EXPRESS TRAVEL RELATED SERVICES CO., INC., DB SERVICING CORPORATION,**

**Defendants-Appellees.**

- - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANTS:** | MERRILL G. DAVIDOFF (<u>with</u> DAVID A. LANGER <u>on the brief</u>), Berger & Montague, P.C., Philadelphia, Pennsylvania, *for Plaintiffs-Appellants*. |
| **FOR APPELLEES:** | EAMON P. JOYCE (<u>with</u> DAVID F. GRAHAM, T. ROBERT SCARBOROUGH, PATRICK E. CROKE, and DAVID W. DENTON, JR.,FIN <u>on the brief</u>), Sidley Austin LLP, New York, New York, *for Defendants-Appellees* Citigroup Inc., Citibank, N.A. (as successor-in-interest to Citibank (South Dakota), N.A., for itself and as successor-in-interest to Citibank U.S.A., N.A., Universal Bank, N.A., and Universal Financial Corp.), and Citicorp Diners Club Inc. |
| | ELIZABETH P. PAPEZ (<u>with</u> ROBERT Y. STERLINE and CHRISTOPHER J. LETKEWICZ, <u>on the brief</u>), Winston & Strawn LLP, Washington, D.C., *for Defendants-Appellees* Discover Financial Services, DB Servicing Corporation, and Discover Bank. |
| | ROWAN D. WILSON (<u>with</u> EVAN R. CHESLER and GARY A. BORNSTEIN <u>on the brief</u>), Cravath, Swaine, & Moore LLP, New York, New York, *for Defendants-Appellees* American Express Company, American Express Travel Related Services Company, Inc., and American Express Centurion Bank. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Pauley, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Plaintiffs appeal from the judgment of the United States District Court for the Southern District of New York (Pauley, J.), which entered judgment in favor of defendants-appellees following a five-week bench trial.  At issue are agreements between defendants (credit card issuing banks[1]) and plaintiffs (classes of individual cardholders).  These agreements include provisions that specify arbitration as the sole method of resolving disputes relating to the credit accounts and disallow (among other things) class actions. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

1. Plaintiffs challenge the finding that defendants did not collusively adopt class-action-barring arbitration clauses in violation of the Sherman Act, 15 U.S.C. § 1.  The standard of review for a district court's findings of fact following a bench trial is clear error.[2]  Fed. R. Civ. P.

---

[1]      Several other credit card issuing banks that allegedly conspired and colluded with defendants have either settled those claims or are otherwise not a part of this appeal.

[2]      Plaintiffs argue that certain language in United States v. General Motors Corp., should be used to adopt a rule that the existence of a conspiracy is a legal conclusion subject to review de novo.  See 384 U.S. 127, 141 n.16 (1966) ("the ultimate conclusion by the trial judge, that the defendants' conduct did not constitute a combination or conspiracy in violation of the Sherman Act, is not to be shielded by the 'clearly erroneous' test").  However, in the very same paragraph, the Supreme Court continues: "the question here is not one of 'fact,' but consists rather of the legal standard required to be applied *to the undisputed facts of the case*."  Id. (emphasis added).  Here, by contrast, the facts were hotly disputed, especially on the ultimate question whether certain conduct by defendants warranted an inference that a conspiracy existed.

52(a)(6); Ceraso v. Motiva Enters., LLC, 326 F.3d 303, 316 (2d Cir. 2003); see also Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."). The district court's conclusion that there was no conspiracy was not clearly erroneous.

An antitrust conspiracy in violation of Section 1 of the Sherman Act requires proof of joint or concerted action as opposed to unilateral action. Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 183 (2d Cir. 2012). Plaintiffs concede that they have no direct evidence of conspiracy; so the conspiracy here "must be proven though 'inferences that may fairly be drawn from the behavior of the alleged conspirators.'" Id. (quoting Michelman v. Clark-Schwebel Fiber Glass Corp., 534 F.2d 1036, 1043 (2d Cir. 1976)).

As the district court recognized, parallel conduct can be probative evidence of unlawful collusion. Apex Oil Co. v. DiMauro, 822 F.2d 246, 253 (2d Cir. 1987). An agreement among competitors "may be inferred on the basis of conscious parallelism, when such interdependent conduct is accompanied by circumstantial evidence and plus factors." Todd v. Exxon Corp., 275 F.3d 191, 198 (2d Cir. 2001). These "plus factors" may include (but are not limited to) "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of inter-firm communications." Twombly v. Bell Atl. Corp., 425 F.3d 99, 114 (2d Cir. 2005) (internal citations omitted), rev'd on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); see also Mayor & City Council of Baltimore, Md. v. Citigroup, Inc., 709 F.3d 129, 136 (2d Cir. 2013).

Our Circuit has never applied General Motors as expansively as plaintiffs urge, and we see no reason to depart from well-settled principles of "clear error" review of factual determinations.

Having found that there was "conscious parallel action in the adoption and maintenance of arbitration clauses,"[3] the district court thoroughly analyzed various "plus factors," including (1) whether defendants had a motive to collude, (2) the quantity and nature of inter-firm communications between defendants and other issuing banks, (3) whether the acts were contrary to the self interest of the defendants, (4) whether the arbitration clauses were "artificially standardized" as a result of an illegal agreement, (5) whether communications about a separate conspiracy to fix foreign currency exchange fees helped prove the instant conspiracy, (6) whether the lack of notes, internal work product, or recollection regarding meetings may suggest a conspiracy, (7) the documentation of the meetings, and (8) recollections of the meetings. After "weighing all the 'plus factors' evidence" and the "extensive record of inter-firm communications," the district court found that the "final decision to adopt class-action-barring clauses was something the Issuing Banks hashed out individually and internally." Ross v. Am. Exp. Co., 35 F. Supp. 3d 407, 452-53 (S.D.N.Y. 2014).[4] That conclusion is plausible in light of the record viewed in its entirety, and we cannot say that the district court was "clearly erroneous" in reaching this conclusion. See Anderson, 470 U.S. at 574.[5]

---

[3] This conclusion was well supported by the record: the district court credited expert testimony that the credit card industry "is an oligopoly in which conscious parallelism is the norm" and noted that "the temporal connection between the meetings and the adoption of the clauses suggests parallel conduct."

[4] The district court then, "for the sake of assisting appellate review," concluded that the alleged conduct would have been an unreasonable restraint on trade. Because we affirm the district court's conclusion that the clauses were not adopted as the result of a conspiracy, we need not consider whether this conclusion was sound.

[5] The district court also held that there was no antitrust standing because there was no antitrust injury. Because we affirm the finding that there was no antitrust conspiracy, we need not reach the issue of whether plaintiffs had antitrust standing.

2. Defendant American Express argues separately that the district court's judgment should be affirmed for lack of Article III standing because plaintiffs are not American Express cardholders. To demonstrate standing, a plaintiff must show (1) injury-in-fact; (2) causation; and (3) redressibility. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). As to injury, the mere existence of the clauses diminishes the cards' value by foreclosing the opportunity for cardholders to go to court and address grievances through class action litigation. See Ross v. Bank of Am., 524 F.3d 217, 224 (2d Cir. 2008). Additionally, it is undisputed that consumer choice was reduced when banks who collectively held between 79 and 87% of the transaction volume and outstanding balances in the credit card market from 1999 to 2009 each adopted a class action barring clause, and it is of no moment that those banks may have since deleted the clauses from their cardholder agreements as part of settlements of these very same cases. As to causation, it is obvious that the adoption of the clauses is linked to the injury claimed by the cardholders. As to redressibility, an injunction invalidating the arbitration clauses would arguably redress the injuries to the market. Thus, we agree with the district court that plaintiffs satisfy Article III's standing requirements.

For the foregoing reasons, and finding no merit in plaintiffs' other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK