(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TEXACO INC. *v.* DAGHER ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 04–805.   Argued January 10, 2006—Decided February 28, 2006*

Petitioners, Texaco Inc. and Shell Oil Co., collaborated in a joint venture, Equilon Enterprises, to refine and sell gasoline in the western United States under the two companies' original brand names.  After Equilon set a single price for both brands, respondents, Texaco and Shell Oil service station owners, brought suit alleging that, by unifying gas prices under the two brands, petitioners had violated the *per se* rule against price fixing long recognized under §1 of the Sherman Act, see, *e.g.*, *Catalano, Inc.* v. *Target Sales, Inc.,* 446 U. S. 643, 647. Granting petitioners summary judgment, the District Court determined that the rule of reason, rather than a *per se* rule, governs respondents' claim, and that, by eschewing rule of reason analysis, respondents had failed to raise a triable issue of fact.   The Ninth Circuit reversed, characterizing petitioners' position as a request for an exception to the *per se* price-fixing prohibition, and rejecting that request.

*Held:* It is not *per se* illegal under §1 of the Sherman Act for a lawful, economically integrated joint venture to set the prices at which it sells its products.  Although §1 prohibits "[e]very contract [or] combination . . . in restraint of trade," 15 U. S. C. §1, this Court has not taken a literal approach to that language, recognizing, instead, that Congress intended to outlaw only *unreasonable* restraints, *e.g.*, *State Oil Co.* v. *Khan,* 522 U. S. 3, 10.  Under rule of reason analysis, antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive.  See, *e.g.*, *id.*, at 10–19.  *Per se* liability is reserved for "plainly anticompetitive" agree-

—————

* Together with No. 04–814, *Shell Oil Co.* v. *Dagher et al.,* also on certiorari to the same court.

ments.  *National Soc. of Professional Engineers* v. *United States,* 435 U. S. 679, 692.  While "horizontal" price-fixing agreements between two or more competitors are *per se* unlawful, see, *e.g.*, *Catalano, supra,* at 647, this case does not present such an agreement, because Texaco and Shell Oil did not compete with one another in the relevant market—*i.e.,* gasoline sales to western service stations—but instead participated in that market jointly through Equilon.  When those who would otherwise be competitors pool their capital and share the risks of loss and opportunities for profit, they are regarded as a single firm competing with other sellers in the market.  *Arizona* v. *Maricopa County Medical Soc.,* 457 U. S. 332, 356.  As such, Equilon's pricing policy may be price fixing in a literal sense, but it is not price fixing in the antitrust sense.  The court below erred in reaching the opposite conclusion under the ancillary restraints doctrine, which governs the validity of restrictions imposed by a legitimate joint venture on nonventure activities.  That doctrine has no application here, where the challenged business practice involves the core activity of the joint venture itself—the pricing of the very goods produced and sold by Equilon.  Pp. 3–6.

369 F. 3d 1108, reversed.

THOMAS, J., delivered the opinion of the Court, in which all other Members joined, except ALITO, J., who took no part in the consideration or decision of the cases.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

Nos. 04–805 and 04–814

_____

## TEXACO INC., PETITIONER
04–805          *v.*
### FOUAD N. DAGHER ET AL.


## SHELL OIL COMPANY, PETITIONER
04–814          *v.*
### FOUAD N. DAGHER ET AL.

ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[February 28, 2006]

JUSTICE THOMAS delivered the opinion of the Court.

From 1998 until 2002, petitioners Texaco Inc. and Shell Oil Co. collaborated in a joint venture, Equilon Enterprises, to refine and sell gasoline in the western United States under the original Texaco and Shell Oil brand names. Respondents, a class of Texaco and Shell Oil service station owners, allege that petitioners engaged in unlawful price fixing when Equilon set a single price for both Texaco and Shell Oil brand gasoline. We granted certiorari to determine whether it is *per se* illegal under §1 of the Sherman Act, 15 U. S. C. §1, for a lawful, economically integrated joint venture to set the prices at which the joint venture sells its products. We conclude that it is not, and accordingly we reverse the contrary judgment of the Court of Appeals.

## I

Historically, Texaco and Shell Oil have competed with one another in the national and international oil and gasoline markets. Their business activities include refining crude oil into gasoline, as well as marketing gasoline to downstream purchasers, such as the service stations represented in respondents' class action.

In 1998, Texaco and Shell Oil formed a joint venture, Equilon, to consolidate their operations in the western United States, thereby ending competition between the two companies in the domestic refining and marketing of gasoline. Under the joint venture agreement, Texaco and Shell Oil agreed to pool their resources and share the risks of and profits from Equilon's activities. Equilon's board of directors would comprise representatives of Texaco and Shell Oil, and Equilon gasoline would be sold to downstream purchasers under the original Texaco and Shell Oil brand names. The formation of Equilon was approved by consent decree, subject to certain divestments and other modifications, by the Federal Trade Commission, see *In re Shell Oil Co.*, 125 F. T. C. 769 (1998), as well as by the state attorneys general of California, Hawaii, Oregon, and Washington. Notably, the decrees imposed no restrictions on the pricing of Equilon gasoline.

After the joint venture began to operate, respondents brought suit in district court, alleging that, by unifying gasoline prices under the two brands, petitioners had violated the *per se* rule against price fixing that this Court has long recognized under §1 of the Sherman Act, ch. 647, 26 Stat. 209, as amended, 15 U. S. C. §1. See, *e.g.*, *Catalano, Inc.* v. *Target Sales, Inc.,* 446 U. S. 643, 647 (1980) *(per curiam)*. The District Court awarded summary judgment to Texaco and Shell Oil. It determined that the rule of reason, rather than a *per se* rule or the quick look doctrine, governs respondents' claim, and that, by eschewing rule of reason analysis, respondents had failed to raise

a triable issue of fact. The Ninth Circuit reversed, characterizing petitioners' position as a request for an "exception to the *per se* prohibition on price fixing," and rejecting that request. *Dagher* v. *Saudi Refining, Inc.,* 369 F. 3d 1108, 1116 (2004). We consolidated Texaco's and Shell Oil's separate petitions and granted certiorari to determine the extent to which the *per se* rule against price fixing applies to an important and increasingly popular form of business organization, the joint venture. 545 U. S. ___ (2005).

## II

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15 U. S. C. §1. This Court has not taken a literal approach to this language, however. See, *e.g.*, *State Oil Co.* v. *Khan,* 522 U. S. 3, 10 (1997) ("[T]his Court has long recognized that Congress intended to outlaw only *unreasonable* restraints" (emphasis added)). Instead, this Court presumptively applies rule of reason analysis, under which antitrust plaintiffs must demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful. See, *e.g.*, *id.*, at 10–19 (concluding that vertical price-fixing arrangements are subject to the rule of reason, not *per se* liability). *Per se* liability is reserved for only those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *National Soc. of Professional Engineers* v. *United States,* 435 U. S. 679, 692 (1978). Accordingly, "we have expressed reluctance to adopt *per se* rules . . . 'where the economic impact of certain practices is not immediately obvious.'" *State Oil, supra,* at 10 (quoting *FTC* v. *Indiana Federation of Dentists,* 476 U. S. 447, 458–459 (1986)).

Price-fixing agreements between two or more competi-

tors, otherwise known as horizontal price-fixing agree-
ments, fall into the category of arrangements that are *per
se* unlawful. See, *e.g., Catalano, supra,* at 647. These
cases do not present such an agreement, however, because
Texaco and Shell Oil did not compete with one another in
the relevant market—namely, the sale of gasoline to ser-
vice stations in the western United States—but instead
participated in that market jointly through their invest-
ments in Equilon.[1]  In other words, the pricing policy
challenged here amounts to little more than price setting
by a single entity—albeit within the context of a joint
venture—and not a pricing agreement between competing
entities with respect to their competing products.
Throughout Equilon's existence, Texaco and Shell Oil
shared in the profits of Equilon's activities in their role as
investors, not competitors. When "persons who would
otherwise be competitors pool their capital and share the
risks of loss as well as the opportunities for profit . . . such
joint ventures [are] regarded as a single firm competing
with other sellers in the market." *Arizona* v. *Maricopa
County Medical Soc.*, 457 U. S. 332, 356 (1982). As such,
though Equilon's pricing policy may be price fixing in a
literal sense, it is not price fixing in the antitrust sense.
See *Broadcast Music, Inc.* v. *Columbia Broadcasting Sys-*

_____

[1] We presume for purposes of these cases that Equilon is a lawful
joint venture.  Its formation has been approved by federal and state
regulators, and there is no contention here that it is a sham.  As the
court below noted: "There is a voluminous record documenting the
economic justifications for creating the joint ventures.  [T]he defendants
concluded that numerous synergies and cost efficiencies would result"
by creating Equilon as well as a parallel venture, Motiva Enterprises,
in the eastern United States, and "that nationwide there would be up to
$800 million in cost savings annually."  369 F. 3d 1108, 1111 (CA9
2004).  Had respondents challenged Equilon itself, they would have
been required to show that its creation was anticompetitive under the
rule of reason.  See *Copperweld Corp.* v. *Independence Tube Corp.,* 467
U. S. 752, 768 (1984).

*tem, Inc.,* 441 U. S. 1, 9 (1979) ("When two partners set the price of their goods or services they are literally 'price fixing,' but they are not *per se* in violation of the Sherman Act").

This conclusion is confirmed by respondents' apparent concession that there would be no *per se* liability had Equilon simply chosen to sell its gasoline under a single brand. See Tr. of Oral Arg. 34. We see no reason to treat Equilon differently just because it chose to sell gasoline under two distinct brands at a single price. As a single entity, a joint venture, like any other firm, must have the discretion to determine the prices of the products that it sells, including the discretion to sell a product under two different brands at a single, unified price. If Equilon's price unification policy is anticompetitive, then respondents should have challenged it pursuant to the rule of reason.[2] But it would be inconsistent with this Court's antitrust precedents to condemn the internal pricing decisions of a legitimate joint venture as *per se* unlawful.[3]

The court below reached the opposite conclusion by invoking the ancillary restraints doctrine. 369 F. 3d, at 1118–1124. That doctrine governs the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on nonventure activities. See, *e.g.*, *National Collegiate Athletic Assn.* v. *Board of Regents of Univ. of Okla.*, 468 U. S. 85, 113–115

———————
[2] Respondents have not put forth a rule of reason claim. 369 F. 3d, at 1113. Accordingly, we need not address petitioners' alternative argument that §1 of the Sherman Act is inapplicable to joint ventures.

[3] Respondents alternatively contend that petitioners should be held liable under the quick look doctrine. To be sure, we have applied the quick look doctrine to business activities that are so plainly anticompetitive that courts need undertake only a cursory examination before imposing antitrust liability. See *California Dental Assn.* v. *FTC,* 526 U. S. 756, 770 (1999). But for the same reasons that *per se* liability is unwarranted here, we conclude that petitioners cannot be held liable under the quick look doctrine.

(1984); *Citizen Publishing Co.* v. *United States*, 394 U. S. 131, 135–136 (1969). Under the doctrine, courts must determine whether the nonventure restriction is a naked restraint on trade, and thus invalid, or one that is ancillary to the legitimate and competitive purposes of the business association, and thus valid. We agree with petitioners that the ancillary restraints doctrine has no application here, where the business practice being challenged involves the core activity of the joint venture itself— namely, the pricing of the very goods produced and sold by Equilon. And even if we were to invoke the doctrine in these cases, Equilon's pricing policy is clearly ancillary to the sale of its own products. Judge Fernandez, dissenting from the ruling of the court below, put it well:

> "In this case, nothing more radical is afoot than the fact that an entity, which now owns all of the production, transportation, research, storage, sales and distribution facilities for engaging in the gasoline business, also prices its own products. It decided to price them the same, as any other entity could. What could be more integral to the running of a business than setting a price for its goods and services?" 369 F. 3d, at 1127.

See also *Broadcast Music, supra*, at 23 ("Joint ventures and other cooperative arrangements are . . . not usually unlawful, at least not as price-fixing schemes, where the agreement on price is necessary to market the product at all").

\* \* \*

Because the pricing decisions of a legitimate joint venture do not fall within the narrow category of activity that is *per se* unlawful under §1 of the Sherman Act, respondents' antitrust claim cannot prevail. Accordingly, the judgment of the Court of Appeals is reversed.

Opinion of the Court

*It is so ordered.*

JUSTICE ALITO took no part in the consideration or decision of these cases.