# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2454

DANIEL WALLACE,

*Plaintiff-Appellant*,

*v.*

INTERNATIONAL BUSINESS MACHINES
CORPORATION; RED HAT, INC.; and
NOVELL, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:05-cv-678 RLY-VSS—**Richard L. Young**, *Judge*.

SUBMITTED OCTOBER 26, 2006—DECIDED NOVEMBER 9, 2006

Before EASTERBROOK, KANNE, and EVANS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Does the provision of copyrighted software under the GNU General Public License ("GPL") violate the federal antitrust laws? Authors who distribute their works under this license, devised by the Free Software Foundation, Inc., authorize not only copying but also the creation of derivative works—and the license prohibits charging for the derivative work. People may make and distribute derivative works if and only if they come under the same license terms as the original work. Thus the GPL propagates from user to user and revision to revision: neither the original author, nor any

creator of a revised or improved version, may charge for the software or allow any successor to charge. Copyright law, usually the basis of limiting reproduction in order to collect a fee, ensures that open-source software remains free: any attempt to sell a derivative work will violate the copyright laws, even if the improver has not accepted the GPL. The Free Software Foundation calls the result "copyleft."

One prominent example of free, open-source software is the Linux operating system, a derivative of the Unix operating system written by AT&T in the 1960s and now available without cost. (Unix® is a trademark of The Open Group, but the source code to many variants of AT&T's work is freely available.) Linux is one of many modern derivatives of Unix—which is not itself under the GPL. Thus Apple Computer, which uses the Berkeley Software Distribution variant of Unix as the foundation for the Mac OS X operating system, is entitled to charge for its software. Linux, initially the work of Linus Torvalds, is maintained by a large open-source community. International Business Machines offers Linux with many of its servers, or customers can install it themselves. IBM has contributed code to the Linux project and furnishes this derivative work to anyone else with an interest. Red Hat, Inc., sells media (such as DVDs), manuals, and support for the installation and maintenance of Linux. The GPL covers only the software; people are free to charge for the physical media on which it comes and for assistance in making it work. Paper manuals, and the time of knowledgeable people who service and support an installation, thus are the most expensive part of using Linux.

Daniel Wallace would like to compete with Linux—either by offering a derivative work or by writing an operating system from scratch—but maintains that this is impossible as long as Linux and its derivatives are available for free. He contends that IBM, Red Hat, and Novell have conspired among themselves and with others (including the

Free Software Foundation) to eliminate competition in the operating system market by making Linux available at an unbeatable price. Under the GPL, which passes from user to improver to user, Linux and all software that incorporates any of its source code will be free *forever*, and nothing could be a more effective deterrent to competition, Wallace maintains. The GPL *is the conspiracy* as Wallace sees things; it is a joint undertaking among users and creators of derivative works to undercut the price of any potential rival. But the district judge dismissed the complaint, ruling that Wallace does not suffer antitrust injury, see *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc*., 429 U.S. 477 (1977), because he is a would-be producer rather than a consumer.

Although antitrust law serves the interests of consumers rather than producers, the Supreme Court has permitted producers to initiate predatory-pricing litigation. See *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209 (1993); *Matsushita Electric Industrial Co. v. Zenith Radio Corp*., 475 U.S. 574 (1986). This does not assist Williams, however, because his legal theory is faulty substantively.

Predatory pricing is a three-stage process: Low prices, followed by the exit of producers who can no longer make a profit, followed by monopoly prices. The law's worry is the final period in which the survivor (or cartel of survivors) recoups losses incurred during the low-price period. When exit does not occur, or recoupment is improbable even if some producers give up the market, there is no antitrust problem. So the Court held in both *Brooke Group* and *Matsushita*. See also, e.g., *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690 (7th Cir. 2006); *Schor v. Abbott Laboratories*, 457 F.3d 608 (7th Cir. 2006). Either prices will stay low (reflecting efficient production and enduring benefits to consumers) or the practice will be self-deterring (because the predator loses more during the low-price period than it gains later, and consumers are

net beneficiaries). When monopoly does not ensue, low prices remain—and the goal of antitrust law is to use rivalry to keep prices low for consumers' benefit. Employing antitrust law to drive prices up would turn the Sherman Act on its head.

Wallace does not contend that software available for free under the GPL will lead to monopoly prices in the future. How could it, when the GPL keeps price low forever and precludes the reduction of output that is essential to monopoly? "[I]f a manufacturer cannot make itself better off by injuring consumers through lower output and higher prices, there is no role for antitrust law to play." *Schor*, 457 F.3d at 612.

Software that is not maintained and improved eventually becomes obsolete, and the lack of reward may reduce the resources devoted to maintenance and improvement of Linux and other open-source projects. If that occurs, however, then proprietary software will enter or gain market share. People willingly pay for quality software even when they can get free (but imperfect) substitutes. Open Office is a free, open-source suite of word processor, spreadsheet and presentation software, but the proprietary Microsoft Office has many more users. Gimp is a free, open-source image editor, but the proprietary Adobe Photoshop enjoys the lion's share of the market. Likewise there is a flourishing market in legal treatises and other materials, plus reference databases such as LEXIS and Westlaw, even though courts give away their work (this opinion, for example, is not covered by copyright and may be downloaded from the court's web site and copied without charge). And so it is with operating systems. Many more people use Microsoft Windows, Apple OS X, or Sun Solaris than use Linux. IBM, which includes Linux with servers, sells mainframes and supercomputers that run proprietary operating systems. The number of proprietary operating systems is growing, not shrinking, so competition

in this market continues quite apart from the fact that the GPL ensures the future availability of Linux and other Unix offshoots.

It does not help to characterize people who accept the GPL as "conspirators." Although the antitrust laws forbid conspiracies "in restraint of trade," 15 U.S.C. §1, §26, the GPL does not restrain trade. It is a cooperative agreement that facilitates production of new derivative works, and agreements that yield new products that would not arise through unilateral action are lawful. See, e.g., *Broadcast Music, Inc. v. Columbia Broadcasting System, Inc.*, 441 U.S. 1 (1979); *Polk Bros., Inc. v. Forest City Enterprises, Inc.*, 776 F.2d 185 (7th Cir. 1985). Cf. *Texaco Inc. v. Dagher*, 126 S. Ct. 1276 (2006).

Nor does it help to call the GPL "price fixing." Although it sets a price of zero, agreements to set maximum prices usually assist consumers and therefore are evaluated under the Rule of Reason. See *State Oil Co. v. Khan*, 522 U.S. 3 (1997). Intellectual property can be used without being used up; the marginal cost of an additional user is zero (costs of media and paper to one side), so once a piece of intellectual property exists the efficient price of an extra copy is zero, for that is where price equals marginal cost. Copyright and patent laws give authors a *right* to charge more, so that they can recover their fixed costs (and thus promote innovation), but they do not *require* authors to charge more. No more does antitrust law require higher prices. Linux and other open-source projects have been able to cover their fixed costs through donations of time; as long as that remains true, it would reduce efficiency and consumers' welfare to force the authors to levy a charge on each new user.

Wallace does not contend that Linux has such a large market share, or poses such a threat to consumers' welfare in the long run, that evaluation under the Rule of Reason

could lead to condemnation. A "quick look" is all that's needed to reject Wallace's claim. See, e.g., *California Dental Association v. FTC*, 526 U.S. 756 (1999); *National Collegiate Athletic Ass'n v. University of Oklahoma*, 468 U.S. 85 (1984); *Ball Memorial Hospital, Inc. v. Mutual Hospital Insurance, Inc.*, 784 F.2d 1325 (7th Cir. 1986) (unless a firm with market power can increase its profits by curtailing output, the practice is lawful under the Rule of Reason). The GPL and open-source software have nothing to fear from the antitrust laws.

AFFIRMED

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*