**BAY AREA SURGICAL MANAGEMENT LLC, et al., Plaintiffs,**

v.

**AETNA LIFE INSURANCE COMPANY, et al., Defendants.**

Case No. 15–cv–01416–BLF

United States District Court, N.D. California, San Jose Division.

Signed 09/21/2015

Donald Ross Pepperman, Taylor Chase Wagniere, Maxwell Michael Blecher, Blecher Collins Pepperman and Joye PC, Los Angeles, CA, for Plaintiffs.

Samuel G. Liversidge, Richard Joseph Doren, Brandon J. Stoker, Heather Lynn Richardson, Gibson Dunn and Crutcher LLP, Gregory Raymond Jones, Thomas A. Ryan, McDermott Will and Emery LLP, Los Angeles, CA, Bambo Obaro, Weil, Gotshal and Manges, Redwood Shores, CA, Adam C. Hemlock, Nicholas J. Pappas, Weil Gotshal and Manges LLP, New York, NY, Kevin B. Goldstein, Weil, Gotshal and Manges LLP, Washington, DC, for Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND**

[Re: ECF 31, 35]

BETH LABSON FREEMAN, United States District Judge

Plaintiffs Bay Area Surgical Management, LLC, Bay Area Surgical Group, Inc., Forest Surgery Center, L.P., SOAR Surgery Center, LLC, Knowles Surgery Center, LLC, National Ambulatory Surgery Center, LLC, and Los Altos Surgery Center, L.P. bring this action alleging violations of the Sherman Act, intentional interference with prospective economic advantage, intentional interference with actual contractual relations, violations of California's antitrust statute, the Cartwright Act, and violations of California's Unfair Competition Law against Defendants E3 Healthcare Management LLC, Alpine Healthcare, LLC, Bascom Surgery Center, L.P., Campus Surgery Center L.P., El Camino Ambulatory Surgery Center, LLC, Silicon Valley Surgery Center, L.P., and Waverley Surgery Center, L.P.'s (collectively "E3"), Defendant United Healthcare Services, Inc. and Defendant Aetna Life Insurance Company (collectively "Insurers"). Before the Court are Defendant E3 and Defendant Insurers' motions to dismiss Plaintiffs' complaint, pursuant to Fed. R. Civ. P. 12(b)(6). The Court has considered the briefing submitted by the parties and the oral argument presented at the hearing on August 6, 2015. For the reasons discussed below, Defendant E3's and Defendant Insurers' motions to dismiss are GRANTED with LEAVE TO AMEND.

## I. BACKGROUND

### A. General Factual Background

The following factual allegations are taken from Plaintiffs' Complaint. Plaintiff Bay Area Surgical Management, LLC manages ambulatory surgical centers, including some owned and operated by the other Plaintiffs. Compl. ¶ 3. The remaining six Plaintiffs own and operate ambulatory surgery centers at which outpatient surgeries are performed. *Id.* ¶¶ 4–9. Defendant Insurers are health insurance companies doing business in California. *Id.* ¶¶ 10–11. Defendants E3 Healthcare Management, LLC and Alpine Healthcare, LLC manage ambulatory surgery centers in Northern California. *Id.* ¶¶ 12–13. The remaining five Defendants own and operate ambulatory surgery centers at which outpatient surgeries are performed. ¶¶ 13–17.

Both of the Defendant Insurers have health benefit plans through which their insureds are reimbursed for covered surgical and facility services. *Id.* ¶ 22. The amount reimbursed by the health benefit plans depends on whether the services were performed by in-network or out-of-network providers. *Id.* ¶ 23. In-network service providers agree to a lower reimbursement rate in exchange for participation in Defendant Insurers' networks. *Id.* ¶ 23. Insureds who utilize in-network service providers are required only to pay any applicable copayment or coinsurance along with the deductible amount provided in the plan. *Id.* On the other hand, out-of-network service providers are reimbursed at specific rates delineated in each insureds' benefit plan. *Id.* Insureds are therefore responsible for any applicable copayment, coinsurance, and deductible amount as well as the difference charged by the out-of-network service provider and the amount reimbursed by Defendant Insurers. *Id.*

In early 2010 and continuing thereafter, Plaintiffs allege that Defendants conspired to suppress competition in the ambulatory surgery market in Northern California by

inducing and persuading physicians and patients not to use Plaintiffs' ambulatory surgery centers, reducing payments to Plaintiffs' ambulatory surgery centers, and refusing to offer a reasonable and nondiscriminatory in-network contract to Plaintiffs. *Id.* ¶¶ 20–21, 32. According to Plaintiffs, Defendants " 'engaged in a continuous stream of communications about Plaintiffs with the objective of eliminating, restraining or substantially reducing [P]laintiffs' ability to compete' in the ambulatory surgical center market in Northern California." *Id.* ¶ 32. Plaintiffs allege that there "have been numerous writings, conversations and meetings among [Defendants] to accomplish this objective." *Id.*

As a result of Defendants' conduct, Plaintiffs allege that ambulatory surgical centers and surgeons have been restricted from functioning in a competitive and open market, the ability of Plaintiffs to attract patients has been severely impacted, and patients have been required to pay coinsurance so that costs to consumers have increased. *Id.* ¶ 33. Moreover, Plaintiffs allege that Defendant's conduct wrongfully interfered with actual and prospective contractual relationships between Plaintiff and physicians Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami. *Id.* ¶¶ 44, 52.

### B. Procedural Background

On March 27, 2015, Plaintiffs filed a complaint against Defendants. ECF 1. On May 22, 2015, Defendant E3 and Defendant Insurers filed motions to dismiss the respective claims against them. ECF 31, 35. Plaintiffs filed oppositions on June 29, 2015, ECF 49, 51 and Defendants filed replies on July 23, 2015. ECF 53, 54. The parties appeared before the Court for oral argument on August 6, 2015. ECF 56.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) concerns what facts a plaintiff must plead on the face of the complaint. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Any complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). A "short and plain statement" demands that a plaintiff plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), which requires that "the plaintiff plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir.2008).

### B. Leave to Amend

■ Under Rule 15(a), a court should grant leave to amend "when justice so requires," because "the purpose of Rule 15 ... [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir.2000) (en banc). A court may deny leave to amend for several reasons, including "undue delay, bad faith, ... [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir.2003).

## C. Requests for Judicial Notice

 Although a district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion, the Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record, without converting a motion to dismiss into one for summary judgment. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir.2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir.2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th Cir.2007).

Plaintiffs and Defendant E3 request judicial notice of court documents from prior actions filed by Plaintiffs in Santa Clara Superior Court. ECF 32, 50. Specifically Plaintiff requests judicial notice of two orders filed in a prior state court action and the docket from the case, ECF 50 at 2, and Defendant E3 request judicial notice of an amended complaint and order of dismissal from a different state court action filed by Plaintiffs. ECXF 32 at 2. Since these documents are court documents, they are the proper subject of judicial notice and the Court GRANTS both Plaintiffs' and Defendant E3's requests for judicial notice.

## III. DISCUSSION

### A. Sherman Act

 Section 1 of the Sherman Act ("Section 1") prohibits unreasonable contracts or combinations in restraint of trade. 15 U.S.C. § 1. A plaintiff may al-lege violations of Section 1 under one or more of the following "three rules of analysis: the rule of reason, per se, or quick look." *United States v. eBay, Inc.*, 968 F.Supp.2d 1030, 1037 (N.D.Cal.2013). Under the rule of reason, a plaintiff must plead four separate elements: (1) the existence of a conspiracy, (2) the intention on the part of the co-conspirators to harm or restrain competition, (3) actual injury to competition, and (4) that the plaintiffs suffered "antitrust injury" as a result of the conspiracy. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1197 (9th Cir. 2012). The per se approach has been applied to group boycotts when there has generally been "joint efforts by a firm or firms to disadvantage competitors," *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 949 (9th Cir 1998) (quoting *Nw. Wholesale Stationers, Inc. v. Pac. Stationery and Printing Co.*, 472 U.S. 284, 293–94, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985)), but the Supreme Court has cautioned that "the category of activities comprising group boycotts 'is not to be expanded indiscriminately.'" *Id.* at 950. As a result, to help guard against the over-application of per se group boycotts, the Ninth Circuit has identified three characteristics that are indicative of a per se group boycott: "(1) the boycott cuts off access to a supply, facility, or market necessary to enable the victim firm to compete; (2) the boycotting firm possesses a dominant market position; and (3) the practices are not justified by plausible arguments that they enhanced overall efficiency or competition." *Id.* (quoting *Hahn v. Oregon Physicians' Serv.*, 868 F.2d 1022, 1030 (9th Cir.1988)). Finally, a quick look analysis may be used where "an observer with even a rudimentary understanding of economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets." *California ex rel. Harris v.*

*Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir.2011) (citing *California Dental Ass'n v. FTC*, 526 U.S. 756, 770, 119 S.Ct. 1604, 143 L.Ed.2d 935 (1999)).

■ For a Section 1 antitrust claim, the complaint must allege facts "plausibly suggesting (not merely consistent with) a conspiracy. It is not enough merely to include conclusory allegations that certain actions were the result of a conspiracy; the plaintiff must allege facts that make the conclusion plausible." *Name.Space, Inc. v. Internet Corp. for Assigned Names and Numbers*, 795 F.3d 1124, 1129 (9th Cir.2015) (internal citations and quotations omitted). A court cannot "infer an anticompetitive agreement when factual allegations just as easily suggest rational, legal business behavior." *Id.* at 1130.

### 1. Pleading Requirements

As a threshold issue, the parties do not even agree on whether Plaintiffs are pursuing antitrust claims under the rule of reason, per se approach, and/or quick look approach. Defendants[1] argue that Plaintiffs' Complaint "expressly alleges that the ·'rule of reason'" applies. Def. Insurers' Reply at 7, ECF 54; Def. E3's Reply at 2, ECF 53. Plaintiffs argue that the language in the Complaint does not "obviate the fact that group boycotts ... are also *per se* violations," Pls.' Opp to Insurers at 13 n.7, ECF 49, Pls.' Opp to E3 at 7 n.4, ECF 51, but also seemingly concede Defendants' argument and claim that "it is not worth the potential delay to amend the Complaint." *Id.*

■ The Court agrees with Defendants and finds that based on the Complaint, Plaintiffs are pursuing an antitrust claim under the rule of reason. Plaintiffs' Complaint expressly states that "Defendants' arrangements are unlawful under

the antitrust laws when assessed under the 'Rule of Reason.'" Compl. ¶ 35. Despite Plaintiffs' attorney argument to the contrary, in a motion to dismiss, the Court relies on the words in the Complaint. This is especially true in antitrust cases where a plaintiff is not "obliged to plead under each possible [rule of analysis.]" *eBay, Inc.*, 968 F.Supp.2d at 1037 ("A plaintiff is the master of its complaint and may choose which claims to allege."). Plaintiffs must abide by the consequences of its pleading decision and cannot, at its convenience, switch to a theory not plead in the Complaint. *See, e.g., Texaco, Inc. v. Dagher*, 547 U.S. 1, 7 n. 2, 126 S.Ct. 1276, 164 L.Ed.2d 1 (2006) (declining to review an antitrust claim under the rule of reason because Plaintiffs had not pled such a claim); *Fox v. Good Samaritan Hosp. LP*, Case No. 04–00874–RS, 2008 WL 2805407, at *4 n. 3 (N.D.Cal. July 17, 2008) (finding that a party cannot begin with a per se claim and then later switch theories). Accordingly, based on the Complaint, the Court concludes that Plaintiffs are pursuing the Sherman Act claim under a rule of reason analysis.

### 2. Rule of Reason Analysis

Under the rule of reason, Plaintiffs must adequately allege (1) the existence of a conspiracy; (2) the intention on the part of the co-conspirators to harm or restrain competition; (3) actual injury to competition; and (4) that the plaintiffs suffered "antitrust injury" as a result. *Brantley*, 675 F.3d at 1197. A failure to sufficiently plead any of these four elements warrants dismissal of Plaintiffs' Sherman Act claims. *See id.* Both Defendants argue that Plaintiffs have failed to plead the existence of a conspiracy or actual injury to competition.

---

**1.** Defendant E3 and Defendant·Insurers filed separate motions to dismiss with overlapping arguments. To the extent Defendants make the same arguments, the Court addresses those arguments together in this Order.

### a. Existence of a Conspiracy

Both Defendants argue that Plaintiffs have failed to adequately allege the existence of a conspiracy. Defendant Insurers also argue that Plaintiffs' alleged conspiracy does not make economic sense and that to the extent Plaintiffs have alleged facts, those facts are consistent with independent action.

#### 1. Factual Allegations

Defendants argue that Plaintiffs' Complaint lacks the necessary factual allegations describing the "who, what, when, where, and why" of the alleged conspiracy. Def. Insurers' Mot. at 8, ECF 35, Def. E3's Mot. at 12, ECF 31. According to Defendants, Plaintiffs have not factually supported the "naked allegation" that Defendants engaged in a conspiracy through a "continuous stream of communications" and "numerous writings, conversations and meetings." Def. Insurers' Mot. at 9, ECF 35. Plaintiffs counter that circumstantial evidence is nearly always used to prove a conspiracy and although they have sufficiently alleged the "who, what, when, where, and why," that level of specificity is not required in antitrust cases. Pls.' Opp. to Def. Insurers at 7–8, ECF 49. Plaintiffs argue that they have alleged the "who" as Aetna, United, and E3; the "when" as "early 2010 and continuing thereafter;" the "what" as "restrain[ing] competition in the ASC market, restrict[ing] patient choice as to selection, price and quality of surgical facilities and physicians, damg[ing] BASM's reputation, and [eliminating] BASM as a viable competitor;" the "why" as keeping BASM out-of-network allowed Defendants to refuse to pay or under pay BASM, and allowed Defendant E3 to benefit from this artificial restraint. *Id* at 8.

■ ˙ The Court agrees with Defendants and finds that Plaintiffs' Complaint fails to plead sufficient facts to support the claim that Defendants formed a conspiracy. In *Kendall v. Visa*, 518 F.3d 1042, 1049 (9th Cir.2008), the Ninth Circuit held that a claim under Section 1 the Sherman Act must "answer the basic questions: who, did what, to whom (or with whom), where, and when?"[2] The Ninth Circuit further explained "to allege an agreement between antitrust coconspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Id.* at 1047. Moreover, the Ninth Circuit expressed concern that "a bare allegation of a conspiracy is almost impossible to defend against" where the "defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Id.* Under *Kendall*, Plaintiffs' Complaint is essentially a formulaic recitation of elements and conclusory allegations. Contrary to Plaintiffs' argument, simply alleging that E3, Aetna, and United conspired is not a sufficient allegation of the "who." Defendant Insurers are large organizations, and Plaintiffs' bare allegation of a conspiracy would be essentially impossible to defend against. Plaintiffs' allegations as to the "what," "who," "where," and "when" are similarly lacking in factual support and would also be impossible to defend against.

Plaintiffs attempt to persuade this Court by citing several cases that purportedly stand for the proposition that Plaintiffs' Complaint is sufficiently pled. However, only five of Plaintiffs' citations post-date

---

**2.** Although Plaintiffs correctly note that the Plaintiffs in *Kendall* were allowed to conduct discovery, this distinction is immaterial because the Ninth Circuit in *Kendall* was addressing "the pleading requirements to state a claim for antitrust violations under Section 1 of the Sherman Act following ... [Twombly]." *Kendall,* 518 F.3d at 1044.

*Twombly* and *Kendall* and involve motions to dismiss. *See Anderson News, L.L.C. v. Am. Media, Inc.,* 680 F.3d 162 (2d Cir. 2012); *Watson Carpet & Floor Covering Inc. v. Mohawk Indus., Inc.,* 648 F.3d 452 (6th Cir.2011); *Arapahoe Surgery Ctr., LLC v. Cigna Healthcare, Inc.,* 80 F.Supp.3d 1257 (D.Colo.2015); *TruePosition, Inc. v. LM Ericsson Tel. Co.,* No. CIV.A.11–4574, 2012 WL 3584626 (E.D.Pa. Aug. 21, 2012); *In re Delta/AirTran Baggage Fee Antitrust Litig.,* 733 F.Supp.2d 1348 (N.D.Ga.2010). And none of these five cases support Plaintiffs' argument. As an example, in *In re Delta,* the complaint contained allegations about specific dates, meetings, and people including how the alleged conspirators communicated with each other, when they did so, who was involved in the communications, and what they communicated. *In re Delta,* 733 F.Supp.2d at 1352–56. To be clear, the Court is not requiring Plaintiffs to provide the same level of detail as contained in these five cases as fewer details may be sufficient under *Kendall and Twombly* but Plaintiff would be well-served to review these five cases. Since the Court finds Plaintiffs have not alleged sufficient facts supporting a violation of the Sherman Act, the Court does not address Defendant Insurers' argument that to the extent Plaintiffs have alleged any facts, those facts are consistent with independent action.

### 2. Economic Sense

Defendant Insurers also argue that Plaintiffs' antitrust theory does not make economic sense. Def. Insurers' Mot. at 9–10. Defendant Insurers claim that as insurers who pay for ambulatory surgical center services, they have a strong interest in preserving and increasing competition. *Id.* Without competition, prices would increase and Defendant Insurers would have to pay more for services. *Id.* Plaintiffs argue that Defendant Insurers have "significant dominance and influence" within the ASC market. Pls.' Opp. to Def. Insur-

ers at 8–9, ECF 49. As a result of this influence, Defendant Insurers have the power to determine reimbursement rates for out-of-network providers and refuse to agree to reasonable in-network rates. *Id.*

■■■ While "[a]ntitrust claims must make economic sense," *Adaptive Power Solutions,* 141 F.3d at 952, the economic theory put forth by Plaintiffs is not supported by the Complaint and instead consists purely of attorney argument. As an example, in arguing that the alleged conspiracy makes economic sense, Plaintiffs cite paragraphs 22–24, and 26 of the Complaint as support for the fact that Defendant Insurers wield significant dominance and influence over the ASC market. However, none of the cited paragraphs discuss Defendant Insurers' dominance and influence in the market. The Court cannot assume economic rationality when Plaintiff has failed to support its argument with the Complaint.

### b. Actual Injury to Competition

■■■ Defendants argue that Plaintiffs failed to adequately define the market, failed to allege Defendants possess market power, and failed to allege injury to competition as a whole. Defendant E3 also argues that Plaintiffs have failed to plead a valid market foreclosure theory.

### 1. Relevant Market

Defendants argue that Plaintiffs' market definition of "Northern California" is not an appropriately defined geographic market. Plaintiffs argue that "Northern California" is an appropriate and relevant market because the geographic market for medical care tends to be local and patients and physicians are unlikely to travel significant distances to a particular ambulatory surgical center. Plaintiffs also argue that the relevant geographic market is a factual issue for the jury.

Although detailed factual findings at the pleading stage are not required, "Plaintiff must provide enough facts [about the relevant market] to enable the opposing party to defend itself effectively." *Orchard Supply hardware LLC v. Home Depot USA, Inc.,* 939 F.Supp.2d 1002, 1010 (N.D.Cal. 2013) (internal quotations omitted). Here, Plaintiffs' market definition is vague and should be alleged with greater specificity. Currently, Plaintiffs' geographic market could potentially span from McKinleyville, California to San Luis Obispo, California. However, Plaintiffs' own argument that physicians and patients are unlikely to travel significant distances is at odds with the potential vastness of the vaguely defined geographic market of Northern California. Thus, the Court finds Plaintiffs' market definition is not appropriately defined.

### 2. Market Power

Defendants argue that Plaintiffs' Complaint does not contain any allegations that Defendants possess market power. Def. Insurers' Mot. at 14, ECF 35. Defendants also contend that there are no allegations that Defendant E3 possesses market power in the alleged ambulatory surgical center services market in Northern California. *Id*; Def. E3's Mot. at 12, ECF 31. Plaintiffs respond that the Complaint alleges anticompetitive effects which Plaintiffs claim is a surrogate for market power, or in the alternative, the Complaint adequately alleges Defendants have market power. Pls.' Opp. at 12–18, ECF 49.

In cases alleging boycotts, Defendants must "possess[ ] market power or exclusive access to an element essential to competition." *Nw. Wholesale Stationers, Inc. v. Pac. Stationery and Printing Co.,* 472 U.S. 284, 296, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). The Court agrees with Defendants and finds that Plaintiffs have not sufficiently alleged Defendants possess market power. Plaintiffs allege that Defendants

have "substantial influence" on the market but it is unclear whether that means Defendants allegedly have market power. Plaintiffs also make several assertions in their opposition papers, such as claiming the healthcare industry is a highly concentrated oligopoly, that are not alleged in the Complaint. Finally, in order for anticompetitive effects to be a surrogate for market power, Plaintiffs must adequately plead injury to competition. As discussed in the next section, Plaintiffs have not sufficiently pled injury to competition and therefore, Plaintiffs cannot use anticompetitive effects as a surrogate for market power.

### 3. Injury to Competition

Defendants argue that Plaintiffs have not alleged injury to the competition in the "market as a whole" other than through one conclusory allegation that consumers have paid higher prices. Plaintiffs argue they have sufficiently alleged injury to competition by alleging that physicians have been restricted from functioning in a competitive and open market and that the quality and choice of facilities and physicians have been reduced.

In pleading injury to competition, "plaintiffs must plead an injury to competition beyond the impact on the plaintiffs themselves." *Brantley,* 675 F.3d at 1198. The Court agrees with Defendants and finds that Plaintiffs have not sufficiently alleged injury to competition. Upon review of the Complaint, Plaintiffs allegations of injury to competition are conclusory. Plaintiffs simply recite the legal conclusion that competition has been harmed without sufficient factual support. *See e.g.,* Compl. ¶¶ 21, 33. Thus, Plaintiffs have failed to sufficiently plead injury to competition.

### 4. Market Foreclosure

Defendant E3 argues that Plaintiffs have not pled a valid market foreclosure

theory. Plaintiffs counter that allegations of market foreclosure are typically only required in antitrust cases involving exclusive dealing.

■ The Court agrees with Plaintiffs and finds that Plaintiffs are not required to plead market foreclosure in a non-exclusive dealings antitrust case. As Defendant E3 recognizes, there must be an anticompetitive impact on the market. However, substantial market foreclosure is just one "indicia of an actual adverse effect on competition, [and it is] not the only·indicia." *US Airways, Inc. v. Sabre Holdings Corp.*, 105 F.Supp.3d 265, 281 (S.D.N.Y.2015). An adverse effect can be shown through other means such as evidence of increased prices. *Id.* Thus, Plaintiffs are not required to plead substantial foreclosure as long as they sufficiently plead an adverse effect on competition through other indicia.

In summary, the Court finds Plaintiffs have failed to sufficiently plead a violation of Section 1 of the Sherman Act and accordingly, the Court GRANTS Defendants' motions to dismiss with leave to amend as to Plaintiffs' Sherman Act claim.

**B. Cartwright Act and Unfair Competition Law**

Plaintiffs' Cartwright Act Claim and Unfair Competition Law claims are predicated on the same allegations and theories as the Sherman Act claim. For the reasons explained in the Court's dismissal of the Sherman Act claim, the Court GRANTS Defendants' motions to dismiss with leave to amend as to these two claims.

**C. Intentional Interference with Prospective Economic Advantage and Actual Contractual Relationships**

■ Defendants argue that Plaintiffs have failed to sufficiently state claims for intentional interference with prospective economic advantage and actual contractual relations. To state a claim for intentional interference with contractual relations under California law, a plaintiff must allege the following elements: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) an intentional act to induce a breach of the contract; (4) an actual breach of the contract; and (5) damage. *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 791 P.2d 587 (1990). With respect to a claim for tortious interference with prospective economic advantage, a plaintiff must allege the same elements for an economic relationship, and also plead that the defendant's conduct was independently wrongful by some legal measure. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153–1154, 131 Cal.Rptr.2d 29, 63 P.3d 937 (2003).

■ With respect to the intentional interference with prospective economic advantage claim, since Plaintiffs have not properly pled the antitrust claim, Plaintiffs have not satisfied the element of an independent intentional wrongful act. With respect to the intentional interference with actual contractual relationships claim, Plaintiffs' Complaint simply recites conclusory allegations about its economic relationships with Dr. Andy Yu, Dr. Peter Yuan, Dr. Julia Kahan, Dr. Norman Kahan, Dr. Samir Sharma, Dr. Jeff Gutman, and Dr. Shahram Gholami. Contrary to Plaintiffs' argument that it has pled sufficient facts, the Complaint does not even describe how these physicians are related to Plaintiffs. Accordingly, the Court GRANTS Defendants' motions to dismiss as to the intentional interference with prospective economic advantage claim and intentional interference with actual contractual relations claim.

## D. Statute of Limitations

Finally, Defendants argue that Plaintiffs' antitrust and unfair competition law claims are time-barred under the four-year statute of limitations and the intentional interference claims are time-barred under the two-year statute of limitations. Defendants contend that if the alleged conspiracy began in early 2010, Plaintiffs' antitrust and unfair competition law claims were time-barred in early 2014. With respect to the intentional interference claims, Defendants note that Plaintiffs allege that doctors stopped referring their cases to Plaintiffs in February 2012 and therefore Plaintiffs' claims would have been time-barred in 2014. Plaintiffs argue that statute of limitations defenses are generally not resolved on motions to dismiss and that in any event, Plaintiffs' antitrust, unfair competition law, and intentional interference claims are not time-barred because Defendants' actions constitute a continuing antitrust violation.

▮▮▮ Under the "continuing violation" doctrine, "each overt act that is part of the [antitrust] violation and that injures the plaintiff ... starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. A.O Smith Corp.*, 521 U.S. 179, 189, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (internal citations and quotations omitted); *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."). An overt act restarts the statute of limitations if it: (1) is "a new and independent act that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating injury on the plaintiff." *Pace Indus. v. Three Phoenix Co.*, 813 F.2d 234, 237 (9th Cir.1987).

▮▮▮ The Court agrees with Defendants and finds that Plaintiffs claims, as alleged, are time-barred. As an initial matter, the Court finds that statute of limitations defenses are appropriately considered on motions to dismiss. *See, e.g., In re Animation Workers Antitrust Litig.*, 87 F.Supp.3d 1195 (N.D.Cal.2015) (determining whether antitrust violation was time-barred on a motion to dismiss). In *In re Animation Workers Antitrust Litig.*, the court found the allegation that "Defendants repeatedly invaded Plaintiffs' ... interests," was insufficient to show a continuing violation. *Id.* at 1212. Here, Plaintiffs' only support for a continuing violation is that Defendants are engaged in a "continu[ing]" stream of communications and that Plaintiffs still remain an out-of-network provider. However, Plaintiffs' Complaint lacks any allegations of new or independent actions taken after 2010 that caused Plaintiffs any new or accumulating injury. Thus, Plaintiffs fail to allege an overt act after early 2010 that was taken by Defendants that would restart the statute of limitations. *See Pace*, 813 F.2d at 237 ("[E]ven when a plaintiff alleges a continuing violation, an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.") Plaintiffs must sufficiently allege that Defendants engaged in a "new and independent act that [was] not merely a reaffirmation of a previous act," which "inflict[ed] new and accumulating injury" on Plaintiffs to restart the statute of limitations. *Id.* at 238. Accordingly, the Court GRANTS Defendant Insurers' motion to dismiss as to this issue with leave to amend.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. The Court GRANTS Defendants' motions to dismiss WITH LEAVE

TO AMEND as to Plaintiffs' claim for a violation of Section 1 of the Sherman Act.

2. The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as to Plaintiffs' claim for a violation of the Cartwright Act.

3. The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as to Plaintiffs' claim for a violation of the Unfair Competition Law.

4. The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as to Plaintiffs' claim for intentional interference with prospective economic advantage.

5. The Court GRANTS Defendants' motions to dismiss WITH LEAVE TO AMEND as to Plaintiffs' claim for intentional interference with actual contractual relations.

**IT IS SO ORDERED.**